UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mario Passante, Carmine Colasanto, Goran Stanic, Marian Tase, Tarquino Reyes, Namgyal Bhutia, Erhlembat Dorjsuren, and Gaetano Lisco, <br><br> Plaintiffs, <br><br> - against - <br><br> Thomas Makkos, Madison Global, LLC, and Nello Balan, <br><br> Defendants. | 17 Civ. 8043 (RA)(KNF) <br><br> Declaration of Michael G. O'Neill in Support of Motion to Approve Settlement |

  Michael G. O'Neill, declares under penalty of perjury, that the following statements are true and correct to the best of his knowledge, information and belief:

  1. I am the attorney for the plaintiffs. This is an action alleging violations of the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL.") The parties have agreed to settle, and I am submitting this declaration in support of plaintiffs' motion for an order approving the settlement as a fair and reasonable resolution of plaintiffs' claims against defendants.

  2. Plaintiffs are all former service employees of Madison Global, LLC, which owns and operates a well known restaurant named "Nello" on Madison Avenue in Manhattan. Defendant Makkos is the owner of Nello; defendant Nello Balan is the former owner of Nello restaurant. Defendant Balan is in default and is not party to the settlement. Plaintiffs intend to abandon their claims against Balan, who is known to be penniless.

  3. Annexed hereto as Exhibit A is a copy of plaintiffs' amended complaint.

  4. The principal claim is that defendants used tips to pay managers and other

employees not entitled to receive tips.  In addition, plaintiffs claimed that their paychecks contained improper deductions for meal breaks, and plaintiff Tase claimed that he was not paid for all the hours that he worked and was not consistently paid spread of hours.[1]

5.      The complaint was filed on October 19, 2017, and the amended complaint was filed on February 5, 2018.  The purpose of the amended complaint was to add plaintiff Lisco to the case.

6.      Thus, the original complaint reached back to October 19, 2011 with respect to NYLL claims and October 19, 2014 with respect to FLSA claims.  For plaintiff Lisco, those dates are February 5, 2012 and February 5, 2015.  Not all plaintiffs were employed during the entire period covered by the lawsuit.

7.      In discovery, defendants produced approximately 1,500 pages of "tip sheets," together with large spreadsheets and voluminous payroll records of the plaintiffs for the relevant periods.

8.      In order to calculate the amount of tips claimed by plaintiffs to have been stolen from them, it was necessary to (a) identify employees who received tips that were not eligible to receive tips, and (b) recalculate the tips that should have been paid to eligible employees.

9.      Although these calculations were relatively straightforward, they were numerous. Nello served both lunch and dinner, and there were separate tip pools for each meal.  This amounted to 730 tip pools per year, and well over 4,000 tip pools for the statutory period.

10.     Other calculations were not so straightforward.  For example, the payroll records did not reveal deductions for meals.  If an employee worked seven hours, his payroll records would simply show that he worked six hours on the day in question.  It was

---

1   The complaint and amended complaint asserted other theories of recovery against defendants, but discovery did not produce sufficient evidence to support those other theories.

impracticable to review actual punch in and punch out records for each and every day worked by each plaintiff.  Similarly, plaintiff Tase's payroll records did not, by definition, show the hours that he worked off the clock.

11.     In order to assist me in calculating the amounts claimed by plaintiffs, I retained the services of Richard Mastrocinque, a CPA with extensive experience in forensic accounting.  Mr. Mastrocinque's firm also had the necessary expertise for handling and analyzing large amounts of data in Excel spreadsheets.

12.     Mr. Mastrocinque and I worked together to develop the most practical and accurate way of calculating and presenting the damages claimed by plaintiffs.  Mr. Mastrocinque prepared a number of calculations, which we then discussed and revised.  Our efforts resulted in a summary of damages claimed by plaintiffs, a copy of which is annexed hereto as Exhibit B.  All told, plaintiffs claimed just over $600,000 in actual damages, plus liquidated damages and attorneys' fees.

13.     After discovery, the parties agreed to retain the services of Ralph Berger, a well regarded private mediator, in order to assist in reaching a settlement.  The mediation was held on September 17, 2019, and the parties agreed to settle plaintiffs' claims for $650,000, inclusive of fees, costs and liquidated damages, paid in twelve installments.  The first installment, due October 15, 2019, was $100,00 and the remaining $550,000 in eleven monthly payments of $50,000.  A copy of the legally binding "Memorandum of Understanding" term sheet signed by the parties at the mediation is annexed hereto as Exhibit C.

14.     Although Exhibit C contemplates a more formal settlement agreement, there is no reason that the settlement cannot be approved based on Exhibit C.  Exhibit C contains all the necessary terms and is final and binding on the parties.  It sets forth the amount of the

settlement, the settlement payment schedule, and it limits plaintiffs' releases to claims pertaining to their employment.  Although Exhibit C does not explicitly breakdown the amounts to be paid to each plaintiff,, costs or attorney's fees, that information is provided by this declaration and therefore can be approved by the Court.

15.     The settlement is a fair and reasonable resolution of a bona fide dispute over FSLA provisions.[2]  The principal claim concerned the recovery of tips paid to employees that plaintiffs claimed were not entitled to share in the tip pool.  Plaintiffs identified a number of employees who they contended were managers, cashiers or maitre d's not providing direct services to customers and who would not be workers that customers would expect to receive tips.

16.     Defendants disputed plaintiffs' characterization of those employees.  According to defendants, the employees in question regularly provided services to customers.  There was no direct evidence on the issue, and a trial would have essentially been a swearing contest.  Thus, there was no certainty that plaintiffs would recover all of the amounts claimed, and, although unlikely in plaintiffs' view, conceivably they could have recovered little or none of the monies claimed.

17.     The claims for improperly deducted meals and unpaid wages to plaintiff Tase similarly involved hotly contested facts which again relied entirely on the testimony of the parties to establish.

18.     In my experience, a recovery of more than 100 percent of the amounts claimed, not including liquidated damages and attorneys' fees, where there are material issues of fact, is

---

2   No attempt has been made to allocate the settlement between State and Federal Law claims.  Defendants equally disputed the State Labor Law claims and the FSLA claims, therefore there is no practical reason to parse the settlement between State and Federal law claims.

a fair and reasonable settlement given the delays and uncertainties of litigation.

19.     The reasonableness of the settlement is further buttressed by the fact that I have agreed to reduce my fee significantly in order to maximize the amounts realized by plaintiffs. My retainer with plaintiffs called for a one third contingency fee, which is common in FSLA cases in the Southern District.  I have agreed to accept a fee of $119,979.54, which is approximately 18.46% of the recovered amount.  I submit that this is a reasonable fee and I request that the Court approve it.

20.     The total out of pocket expenses amounted to $10,144.71, broken down as follows:

| | |
|---|---|
| Filing fee: | $   400.00 |
| Richard Mastrocinque | $8,925.00 |
| Legal research costs | $   312.99 |
| Court reporter | $   250.00 |
| Messengers | $   150.00 |
| Postage | $     39.72 |
| Process server | $     62.00 |
| Witness fee | $     50.00 |

I certify that these expenses were duly incurred and were reasonable and necessary for the prosecution of plaintiffs' claims.

21.     The net recovery to plaintiffs after my fees and out of pocket expenses is $519,875.75.  This is broken down among the plaintiffs as follows:

| | |
|---|---|
| Dorjsuren | $ 85,938.78 |
| Lisco | $ 30,520.31 |
| Stanic | $118,868.59 |
| Tase | $159,026.90 |
| Reyes | $ 47,947.08 |
| Passante | $ 28,444.93 |
| Colasanto | $ 47,049.99 |

       Bhutia                        $ 2,079.16

22.      The settlement was apportioned among the plaintiffs according to the amount of their claims, except that a small additional sum was voted to Mario Passante, because he took the lead in the litigation and bore most of the litigation burden for the group.

23.      Although I believe that the foregoing adequately demonstrates the fairness and reasonableness of the settlement, I would like to point out that it compares favorably to another settlement involving different plaintiffs but the same defendants which was recently approved by this Court in *Sudru, et al v. Madison Global, LLC*, 15 Civ. 6567 (HBP). *Sudru* was a class and collective action involving substantially the same claims asserted by plaintiffs in this case. The class in *Sudru* consisted of all waiters, runner, busboys and bartenders employed at Nello between August 19, 2009 and September 1, 2017.[3] The *Sudru* action settled for the gross amount of up to $342,500, with the attorneys receiving one third of the settlement amount, or up to $114,166.66 in consideration of fees and costs. I say "up to," because under the *Sudru* settlement, any unclaimed portion of the settlement was to be returned to the defendants. A copy of the *Sudru* settlement agreement is annexed hereto as Exhibit D and the order approving the settlement is annexed hereto as Exhibit E.

24.      A comparison of the settlement reached in this case with that reached in the *Sudru* action is as follows:

|  | This action | *Sudru* |
|---|---|---|
| Number of plaintiffs | 8 | Approx 81[4] |

---

3   The plaintiffs in this action all opted out of the *Sudru* action.

4   The order approving settlement stated that the size of the class was estimated to be 81. However, in performing calculations based on the documents provided by defendants to us, we identified approximately 145 employees who had received tips between 2011 and 2018. Even accounting for individuals who should not have received tips, I do not see how the *Surdu* class could have consisted of fewer than 125 individuals.

| Amount claimed: | $613,772 | $375,000[5] |
|---|---|---|
| Settlement amount: | $650,000 | $342,500 |
| Costs and Fees | $130,124.25 | $114,166.66 |
| Net settlement to plaintiffs | $519,875.75 | $228,333.34 |
| Net recovery to amount claimed | 84.7% | 60.88% |

25.     Given that the settlement in *Surdu* was considered fair and reasonable, I submit that *a fortiori* the settlement in this action is a fair and reasonable resolution of plaintiffs' FSLA claims.

26.     Accordingly, I respectfully request that the Court approve the settlement, attorney's fee and out of pocket expenses as fair and reasonable.

Dated: New York, New York
     October 18, 2019

MICHAEL G. O'NEILL

_____
Attorney for Plaintiff
30 Vesey Street, Third Floor
New York, New York 10007
(212) 581-0990

---

5   This figure was cited by the order approving settlement as an "estimate" of the amount claimed by the class for misappropriated tips.  No estimate was given for the other claims asserted in *Surdu*, and the order approving settlement does not discuss the method by which this estimate was calculated.  Again, I have reason to doubt the accuracy of the *Surdu* figures.  The amount claimed for stolen tips in this action, $499,932, which would be a subset of the damages claimed in *Surdu*, is greater than the entire *Surdu* estimate.  In order to calculate plaintiffs' damages in this case, it was necessary to calculate *all* the stolen tips during the period in question.  We determined that figure to be $2,060,443.88.  Since this action covered about seven years as opposed to the nine years in *Surdu*, I believe that the true amount of damages in the *Surdu* action to be much greater than that estimated by plaintiffs' counsel in *Surdu*.

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mario Passante, Carmine Colasanto, Goran Stanic, Marian Tase, Tarquino Reyes, Namgyal Bhutia, Erhlembat Dorjsuren and Gaetano Lisco, | 17 Civ. 8043 ( )( ) |
| Plaintiff, | Amended Complaint and Jury Demand |
| - against - | |
| Thomas Makkos, Madison Global, LLC, and Nello Balan, | |
| Defendants. | |

Plaintiffs, by their attorney, Michael G. O'Neill, allege as follows:

1.      This in an action for money damages resulting from defendants' systematic and intentional violation of the Fair Labor Standards Act ("FLSA"), the New York State Labor Law and the New York Labor Department Regulations with respect to the payment of tips and wages and the failure to provide notices to plaintiffs as required by the New York State Labor Law and New York Labor Department Regulations.

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) because defendants reside in the Southern District.

4.      Plaintiff Mario Passante is an individual and resides in the State of New York.

5.      Plaintiff Carmine Colasanta is an individual and resides in the State of New

1

York.

6.      Plaintiff Goran Stanic is an individual and resides in the State of New York.

7.      Plaintiff Marian Tase is an individual and resides in the State of New York.

8.      Plaintiff Tarquino Reyes is an individual and at relevant times resided in the State of New York.

9.      Plaintiff Erhlembat Dorjsuren is an individual and resides in the State of New York.

10.      Plaintiff Namgyal Bhutia is an individual and resides in the State of New York.

11.      Plaintiff Gaetano Lisco is an individual and resides in the State of New York.

12.      Defendant Makkos is and at all relevant times was member of defendant Madison Global LLC.

13.      Defendant Nello is and at all relevant times was member of defendant Madison Global LLC.

14.      Defendant Madison Global LLC owns and operates a restaurant (the "Restaurant") named "Nello" located at 696 Madison Avenue, New York, New York.

15.      Plaintiff Mario Passante became employed at the Restaurant as a waiter in about September, 2016.

16.      Plaintiff Carmine Colasanto became employed at the Restaurant as a waiter in about August, 2016.

17.     Plaintiff Goran Stanic was employed at the Restaurant as a waiter from about November, 2009 until about September 8, 2017.

18.     Plaintiff Marian Tase was employed at the Restaurant as a waiter from about July, 2001 until about August 30, 2017.

19.     Plaintiff Tarquino Reyes was employed at the Restaurant as a runner from about June 2009 until about May 15, 2017.

20.     Plaintiff Erhlembat Dorjsuren was employed at the Restaurant as a waiter from about September, 2007 until about May 31, 2017.

21.     Plaintiff Namgyal Bhutia was employed at the Restaurant as a waiter from about May, 2017 until about August 20, 2017.

22.     Plaintiff Gaetano Lisco was first employed at the Restaurant as a waiter from before 2011 until about January 2016.

23.     During the entire period of plaintiffs' employment, and, upon information and belief, for more than six years, defendants have had in place a policy, practice, procedure, and requirement that all tips left for table servers (hereinafter simply referred to as tips) be pooled and distributed in a manner dictated by defendant (the "Tip Distribution Practice.")

24.     Under the Tip Distribution Practice, all tips were pooled after each shift and allocated according to a point system.

25.     Under the point system used in the Restaurant, employees who shared in tips were assigned anywhere from .5 to 1.5 points.

3

26.     For example, waiters typically receive 1 point and runners .5 points.

27.     During each shift, there was always at least one manager on duty.

28.     All duty managers were permitted to participate in the distribution of tips, and they were assigned 1.5 points.

29.     The duty managers did little or no direct customer service, apart from seating guests.

30.     In addition to the 1.5 points, the duty managers received "handshakes" from customers.  A handshake is a tip given to the manager for providing a favorable table to the customer.

31.     The duty managers did not pool their handshake tips.

32.     In addition to forcing plaintiffs to share their tips with managers, defendants provided an extra fraction of a point to waiters who performed additional services that were unrelated to customer service.  In this manner, defendants illegally used tip money to pay for work that was unrelated to customer service.

33.     At no time did plaintiffs receive the notices required by New York Labor Law 198.1-b.

34.     At no time did plaintiffs receive the notices required by New York Labor Law 198.1-d.

35.     Plaintiffs frequently worked double shifts.

36.     A double shift is more than ten hours.

37.     Plaintiffs were not always paid spread of hours pay as required by the New

York Labor Law.

38.     At all times, defendants claimed the "tip credit" pursuant to the FLSA, the New York Labor Law and New York Labor Department Regulations.

39.     Upon information and belief, defendants did not provide plaintiffs with the notices required by the FLSA, the New York Labor Law or the New York Labor Department Regulations in order to claim the tip credit.

40.     Plaintiffs frequently worked more than 40 hours in a week.

41.     Plaintiffs were not paid for all the hours worked and were not paid overtime for all the overtime hours worked.

42.     Typically, defendants "shaved" two to four hours from the paychecks of their employees, including plaintiffs.

43.     At some or all times, defendants have been and, in the case of Makkos and Madison Global, continue to be employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

44.     During some or all times, defendants Makkos and Nello have been employers within the meaning of the FLSA and the New York Labor Law, in that they have direct control and responsibility of the employment practices of the Restaurant.

45.     In particular, during all relevant times, Makkos or Nello hired and fired employees, set the rates of pay and most important, were responsible for the illegal employment practices at issue herein.

46.     In fact, Makkos and Nello are repeat offenders and have been sued with some

5

regularity in the past over the very same employment practices that are at issue in this lawsuit.

47.     Makkos and Nello have knowingly and intentionally violated the FLSA and New York Labor Law.

48.     Upon information and belief, it is in fact the policy of defendants to violate the FLSA and New York Labor Law with respect to the practices complained of herein, because they have found that it is economically to their benefit to steal tips and wages and pay the occasional cost of settlement rather than pay their employees as required by law.

**Claim One**

49.     Defendant has failed to pay, and fails to pay, plaintiffs the minimum and overtime wages to which they were and are entitled under the FLSA.

50.     Defendant's violations of the FLSA, as described in this complaint have been willful and intentional.

51.     Because defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

52.     As a result of defendant's willful violations of the FLSA, plaintiffs have suffered damages by being denied minimum and overtime wages in accordance with 29 U.S.C. §§ 201 et seq.

53.     As a result of the unlawful acts of defendant, plaintiffs have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys'

fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

### Claim Two

54.     Defendants have failed to pay plaintiffs the minimum and overtime wages to which they were and are entitled under the New York Labor Law and New York Labor Department Regulations.

55.     Defendant's violations of the New York Labor Law and New York Labor Department Regulations, as described in this complaint have been willful and intentional.

56.     As a result of defendant's willful violations of the New York State Labor Law and New York Labor Department Regulations, plaintiffs have suffered damages by being denied minimum and overtime wages in accordance with Article 19 of the New York State Labor Law and supporting regulations.

57.     As a result of the unlawful acts of defendant, plaintiffs have been deprived (and are being deprived) of minimum and overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of their unpaid minimum wages, unpaid overtime wages, together with prejudgment interest, attorneys' fees and costs.

### Claim Three

58.     Defendants violated and continue to violate Section 196-d of the New York Labor Law by appropriating for itself a portion of the tips left for plaintiffs.

59.     As a result of defendant's violation of Section 196-d of the New York Labor Law, plaintiffs have suffered damages.

60.     As a result of defendant's violation of Section 196-d of the New York Labor

Law, plaintiffs are entitled to an award of damages to be determined at trial by jury, together with prejudgment interest, attorneys' fees and costs.

## Claim Four

61.     Defendants were not entitled to claim the tip credit under the FLSA because they (a) failed to remit to plaintiffs all of the tips left for them by customers of the Restaurant and (b) failed to provide plaintiffs with the notice required by the FLSA.

62.     As a result, defendants are required to pay to plaintiffs the tip credit for all the hours that they worked within the relevant period of limitations.

## Claim Five

63.     Defendants were not entitled to claim the tip credit under the The New York Labor Law and New York Labor Department Regulations because they failed to provide plaintiffs with the notice required by the New York Labor Law and the New York Labor Department Regulations.

64.     As a result, defendants are required to pay to plaintiffs the tip credit for all the hours that they worked within the relevant period of limitations.

## Claim Six

65.     Defendants failed to pay plaintiffs for all their spread of hours as required by the New York Labor Law and New York Labor Department Regulations.

## Claim Seven

66.     Defendants failed to provide the notices required by New York Labor Law

198.1-b.

## Claim Eight

67.     Defendants failed to provide the notices required by New York Labor Law

198.1-d.

WHEREFORE, plaintiffs pray for all available relief under law and equity, including

but not limited to a money judgment for their damages, liquidated damages under the

FLSA, the New York Labor Law and New York Labor Department Regulations, penalties

and fines provided for under New York Labor Law sections 198.1-b and 198.1-d, attorneys

fees, costs, prejudgment interest at the New York State statutory rate, and any and all relief,

damages, costs of any nature whatsoever available to plaintiffs under any Federal or State

law, whether such laws have specifically been identified herein, as a result of the events and

transactions described herein, whether or not specifically prayed for.

Dated: New York, New York
      February 5, 2018

                        MICHAEL G. O'NEILL
                        (MO3957)

                        _____
                        Attorney for Plaintiffs
                        30 Vesey Street, Third Floor
                        New York, New York 10007
                        (212) 581-0990

**JURY DEMAND**

Plaintiffs demand trial by jury in this action.

Dated: New York, New York
        February 5, 2018

                                        MICHAEL G. O'NEILL
                                        (MO3957)


                                        _____

                                        Attorney for Plaintiffs
                                        30 Vesey Street, Third Floor
                                        New York, New York 10007
                                        (212) 581-0990

# Exhibit B

## Stolen Tips

| | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | Totals |
|---|---|---|---|---|---|---|---|---|---|
| Elkhembat Dorzsaren - Ethan | $ 1,613.00 | $ 6,869.00 | $ 12,219.00 | $ 16,145.00 | $ 14,588.00 | $ 35,484.00 | $ 10,067.00 | | $ 96,985.00 |
| Gaetano Lisco | $ 787.00 | $ 6,352.00 | $ 8,599.00 | $ 6,773.00 | $ 6,889.00 | $ 1,012.00 | | | $ 30,412.00 |
| Goran Stanic | $ 1,739.00 | $ 8,111.00 | $ 12,598.00 | $ 20,830.00 | $ 25,230.00 | $ 26,525.00 | $ 26,659.00 | | $ 121,692.00 |
| Marian Tase | $ 2,199.00 | $ 13,670.00 | $ 21,064.00 | $ 11,939.00 | $ 10,349.00 | $ 44,890.00 | $ 16,405.00 | | $ 120,516.00 |
| Tarquino Reyes | $ 1,249.00 | $ 4,496.00 | $ 8,867.00 | $ 7,398.00 | | $ 18,267.00 | $ 9,330.00 | | $ 49,607.00 |
| Mario Passante | | | | | | $ 4,583.00 | $ 19,048.00 | | $ 23,631.00 |
| Colasante | | | | | $ 7,338.00 | $ 24,636.00 | $ 22,199.00 | $ 259.00 | $ 54,432.00 |
| Bhutia | | | | | | | $ 2,315.00 | $ 342.00 | $ 2,657.00 |
| | | | | | | | | | $ 499,932.00 |

## Meals

| | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | Totals |
|---|---|---|---|---|---|---|---|---|---|
| Elkhembat Dorzsaren - Ethan | $ 201.00 | $ 1,325.00 | $ 1,710.00 | $ 1,425.00 | $ 1,740.00 | $ 2,722.00 | $ 1,132.00 | | $ 10,255.00 |
| Gaetano Lisco | $ 105.00 | $ 1,245.00 | $ 1,255.00 | $ 580.00 | $ 800.00 | $ 75.00 | | | $ 4,060.00 |
| Goran Stanic | $ 230.00 | $ 1,600.00 | $ 1,755.00 | $ 1,850.00 | $ 2,965.00 | $ 2,197.00 | $ 3,015.00 | | $ 13,612.00 |
| Marian Tase | $ 300.00 | $ 2,810.00 | $ 3,040.00 | $ 1,110.00 | $ 2,670.00 | $ 3,600.00 | $ 1,972.00 | | $ 15,502.00 |
| Tarquino Reyes | $ 125.00 | $ 870.00 | $ 1,235.00 | $ 640.00 | $ 1,190.00 | $ 1,402.00 | $ 1,012.00 | | $ 6,474.00 |
| Mario Passante | | | | | | $ 427.00 | $ 2,017.00 | $ 25.00 | $ 2,469.00 |
| Colasante | | | | | $ 725.00 | $ 1,905.00 | $ 2,392.00 | $ 20.00 | $ 5,042.00 |
| Bhutia | | | | | | | $ 262.00 | | $ 262.00 |
| | | | | | | | | | $ 57,676.00 |

## Marian Tase Excess Tips

| | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | Totals |
|---|---|---|---|---|---|---|---|---|---|
| Elkhembat Dorzsaren - Ethan | $ 153.00 | $ 1,057.00 | $ 2,182.00 | $ 1,408.00 | $ 1,933.00 | $ 4,614.00 | $ 545.00 | | $ 11,892.00 |
| Gaetano Lisco | $ 77.00 | $ 990.00 | $ 1,590.00 | $ 579.00 | $ 894.00 | $ 127.00 | | | $ 4,257.00 |
| Goran Stanic | $ 211.00 | $ 1,270.00 | $ 2,243.00 | $ 1,827.00 | $ 3,300.00 | $ 3,725.00 | $ 1,449.00 | | $ 14,025.00 |
| Marian Tase | $ 145.00 | $ 1,477.00 | $ 2,575.00 | $ 723.00 | $ 2,036.00 | $ 5,704.00 | $ 621.00 | | $ 13,281.00 |
| Tarquino Reyes | $ 91.00 | $ 694.00 | $ 1,581.00 | $ 636.00 | $ 1,333.00 | $ 2,377.00 | $ 494.00 | | $ 7,206.00 |
| Mario Passante | | | | | | | $ 987.00 | | $ 987.00 |
| Colasante | | | | | $ 3,227.00 | | $ 1,164.00 | | $ 4,391.00 |
| Bhutia | | | | | | | $ 125.00 | | $ 125.00 |
| | | | | | | | | | $ 56,164.00 |

Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARIO PASSANTE, CARMINE COLASANTO,
GORAN STANIC, MARIAN TASE,
TARQUINO REYES, NAMGYAL BHUTIA and
ERHLEMBAT DORJSUREN and GAETNO LISCO      Index No. 17-cv-08043


                          **Plaintiffs,**          <u>**MEMORANDUM OF**</u>
        -against-                                  <u>**UNDERSTANDING**</u>

THOMAS MAKKOS, NELLO BALAN and
MADISON GLOBAL, LLC,

                          **Defendants.**
-------------------------------------------------------------------X


In settlement of the above-captioned matter, the parties hereby agree to the following terms which will be incorporated into a more formal settlement agreement which shall be submitted to the Court for approval.  It is understood that the terms set forth below are final and binding upon the parties.

1.      Defendants agree to pay plaintiffs the sum total of $650,000.00. $100,000.00 of this amount shall be deposited in an escrow account at Hoffmann & Associates by October 15, 2019.  Thereafter, commencing on November 15, 2019 payments in eleven equal installments shall be made to the plaintiffs.

2.      The Settlement Agreement shall contain an acceleration clause in the event of default or late payment so that all remaining monies will immediately become due following ten days writing notice of such default or late payment.

3.      Defendants Thomas Makkos and Madison Global, LLC shall execute Confessions of Judgments in their individual and corporate capacities.

4.      The parties will request that the Court retain continuing jurisdiction until payment in full is made.

5.      Counsel for plaintiffs shall provide counsel for defendants with a breakdown of amounts to be paid to plaintiffs as well as to the Law Firm of Michael O'Neill.

6.      Plaintiffs shall execute full releases pertaining to their employment with defendants.

7.      Michael O'Neill, counsel for plaintiffs, shall sign this Agreement on behalf of Tarquino Reyes and Namgyal Bhutia, and Gautam Lisio

Dated: September 17, 2019

Mario Passante
Plaintiff

Dated: September 17, 2019

Carmine Colasanto
Plaintiff

Dated: September 17, 2019

Goran Stanic
Plaintiff

Dated: September 17, 2019

Marian Tase
Plaintiff

Dated: September 17, 2019

Tarquino Reyes
Plaintiff

Dated: September 17, 2019

Namgyal Bhutia
Plaintiff

2

Dated: September 17, 2019

_____
Erhlembat Dorjsuren
Plaintiff

Dated: September 17, 2019

_____
Gaetano Lisco
Plaintiff

Dated: September 17, 2019

_____
Michael G. O'Neill, Esq.
Attorney for Plaintiffs

Dated: September 17, 2019

_____
Thomas Makkos
Defendant

Dated: September 17, 2019

_____
Andrew S. Hoffmann, Esq.
Attorney for Defendants

Exhibit D

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

ALEXANDRU SURDU, DINO TITO,
ANASTASIA MAYFAT, CIPRIAN GROSU,
and LUIS LOPEZ, on behalf of themselves and
those similarly situated,

                             Plaintiffs,

         - against -

MADISON GLOBAL LLC, d/b/a NELLO,
NELLO BALAN, and THOMAS MAKKOS

                            Defendants.

---------------------------------------------------------------X

Case No.: 15-cv-6567 (PGG)

## SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs Alexandru Surdu, Dino Tito, Anastasia Mayfat, Ciprian Grosu and Luis Lopez ("Plaintiffs"), on behalf of themselves and the "Class Members" (as that term is defined in Section 1.7 below) and Defendants Madison Global, LLC, d/b/a Nello ("Nello") and Thomas Makkos ("Makkos," together with Nello the "Defendants," collectively with Plaintiffs the "Parties"), through their respective counsel, hereby enter into this Settlement and Release Agreement (the "Agreement") to resolve all claims which were asserted or could have been asserted against Defendants by Plaintiffs and the Class Members in the Litigation (as that term is defined in below).

## RECITALS

A.    WHEREAS, Plaintiffs filed a Class and Collective Action Complaint on August 19, 2015 (the "Complaint") in the above-captioned action (the "Litigation") alleging that Plaintiffs and Class Members were not paid the applicable minimum wage;

B.    WHEREAS, the Complaint asserted class action claims under the New York Labor Law ("NYLL") and collective action claims under the Fair Labor Standards Act ("FLSA") and sought recovery of, among other things, unpaid minimum wages, liquidated damages, and attorneys' fees and costs;

C.    WHEREAS, ten (10) members of the putative collective have filed consents to join the Litigation;

D.     WHEREAS, the Parties participated in an all-day mediation on September 16, 2016 with the assistance of an experienced mediator, Ralph S. Berger, which mediation was successful;

E.     WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to Plaintiffs and Class Members, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class Members; and,

F.     WHEREAS, Defendants have denied and continue to deny all of the allegations made by Plaintiffs, have denied and continue to deny that the Class Members, or any putative collective members, were not paid the applicable minimum wage under the NYLL, the FLSA, or any other statute, have denied and continue to deny that Defendants are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Complaint, and have denied and continue to deny that the claims asserted in the Complaint are appropriate for class or collective treatment, except for settlement purposes only;

G.     NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

**1.1**     **Agreement.** "Agreement" means this Settlement Agreement and Release.

**1.2**     **Authorized Claimant.** "Authorized Claimant(s)" means a Class Member or the authorized legal representative of such Class Member, who timely and validly files a Claim Form and therefore is entitled to receive a Settlement Check.

**1.3**     **Application for Final Approval.** "Application for Final Approval" means documents and materials to be filed with the Court pursuant to Section 2.7, seeking approval of the settlement.

**1.4**     **Bar Date.** "Bar Date" means the date as set by the Court by which any Class Member who wishes to qualify as an Authorized Claimant must timely file a Claim Form pursuant to Section 2.4(D).

**1.5**     **Claim Form.** "Claim Form" means the form as approved by the Court, a copy of which is attached to the Notice of Proposed Settlement, that Class Members (other than the Named and Opt-In Plaintiffs) must sign and return by the Bar Date to become Authorized Claimants.

**1.6**    **Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" shall mean The Klein Law Group, P.C.

**1.7**    **Class Members.** "Class Members" shall mean all individuals who worked as servers, runners, bussers and bartenders and who received tips at Nello from August 19, 2009 through the date of the Preliminary Approval Order as defined in Section 1.27 below, except for individuals meeting that definition who previously waived all claims against Nello under the Fair Labor Standards Act ("FLSA") and New York Labor Law through the prior actions having Southern District of New York ("SDNY") Case Numbers 09-CV-9940 and 12-CV-3060.

**1.8**    **FLSA Collective.** "FLSA Collective" shall consist of all Class Members who have already filed timely and valid consents to sue in the Litigation under the FLSA, or do so by participating in this settlement.

**1.9**    **Class List.** "Class List" means a list of all Class Members, identified by name and address, contained in a confidential document that Defendants shall provide to the Settlement Claims Administrator. The Class List is to be used by the Settlement Claims Administrator to assist in effectuating the settlement as set forth herein, and may not be used for any other purpose.

**1.10**   **Costs and Fees.** "Costs and Fees" means Plaintiffs' Counsels' attorneys' fees, costs, and expenses, accountant fees and costs, Settlement Claims Administrator's fees and costs, and Service Awards.

**1.11**   **Court.** "Court" shall mean the SDNY, before the Honorable Magistrate Judge Henry Pitman.

**1.12**   **Covered Period.** "Covered Period" shall mean the period from August 19, 2009 through the date of the Preliminary Approval Order as defined in Section 1.27 below.

**1.13**   **Days.** "Days" means business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

**1.14**   **Defendants.** "Defendants" shall mean Nello and Makkos.

**1.15**   **Defendants' Counsel.** "Defendants' Counsel" means, Roger H. Briton, Esq., and Noel Tripp, Esq., of Jackson Lewis, P.C., 58 S. Service Road, Suite 250, Melville, NY 11747.

**1.16**   **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

**1.17**   **Fee Award.** "Fee Award" is defined in Section 3.3(A) below.

**1.18**   **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval.

**1.19**  **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Costs and Fees, and dismissing the Litigation with prejudice.

**1.20**  **Final Effective Date.** Provided no appeal of the Final Approval Order is timely filed, the "Final Effective Date" means thirty (30) days after the Court has entered a Final Approval Order approving this Agreement as provided in Section 2.8. If such an appeal is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Approval Order has been finally dismissed; (2) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form entered by the Court.

**1.21**  **Gross Settlement Fund.** "Gross Settlement Fund" refers to Three Hundred Forty-Two Thousand Five Hundred Dollars and No Cents ($342,500.00), the maximum amount Nello has agreed to pay, exclusive of Employer Payroll Taxes.

**1.22**  **Named and Opt-in Plaintiffs.** "Named Plaintiffs" refers to Alexandru Surdu, Dino Tito, Anastasia Mayfat, Ciprian Grosu and Luis Lopez. "Opt-in Plaintiffs" refers to the following ten (10) individuals, who filed consents to join the Litigation pursuant to 29 U.S.C. § 216(b) prior to the Parties' mediation on September 16, 2016: Constantine Haralabopoulus, Bilguun Ganhuyag, Francesco Desideri, Gian Maria Montoro, Stefano Naia, Adnan Dibra, Sussana De Martino, (estate of) Luca Federico, Juan Carlos Rios, Gulnaz Badakshanova.

**1.23**  **Net Settlement Amount.** "Net Settlement Amount" means the amounts paid to Authorized Claimants, and Costs and Fees. "Net Settlement Fund" means the Gross Settlement Fund minus the maximum attorneys' fees, costs and expenses payment of $114,166.66, and all other Costs and Fees besides attorneys' fees.

**1.24**  **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit as authorized in the Preliminary Approval Order.

**1.25**  **Objector.** "Objector" means an individual who properly files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**1.26**  **Opt-out Statement.** "Opt-out Statement" is a written, signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

**1.27**  **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) certifying the Class pursuant to F.R.C.P. 23 solely for purposes of

effectuating the Agreement; (ii) conditionally certifying the FLSA Collective pursuant to 29 U.S.C. § 216(b) solely for the purposes of effectuating the Agreement; (iii) preliminarily approving the terms and conditions of this Agreement; (iv) appointing Class Counsel as defined above; (v) directing the manner and timing of providing Notice to the Class Members; and (vi) setting dates to effectuate the terms of this Agreement, including the Bar Date and the date of the Fairness Hearing.

**1.28**  **Released Class Claims.**  "Released Class Claims" means all wage and hour claims specifically related to employment of Class Members with Defendants that were or could have been asserted under federal or state law by or on behalf of Class Members, excluding Class Members who opt-out of the settlement, for the period August 19, 2009, through the date of the Preliminary Approval Order. The Released Class Claims include all claims specifically related to employment of Class Members and members of the FLSA Collective under federal and state law, including but not limited to claims for unpaid regular or overtime wages, spread-of-hours, failure to provide proper wage notices and/or statements, unlawful tip deductions, unpaid uniform expenses, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages and attorneys' fees, expenses, disbursements and Costs and Fees related to such claims.

**1.29**  **Releasees.**  "Releasees" shall mean Defendants, as defined herein, their respective affiliates, subsidiaries, successors and all other related entities, including but not limited to all of their incumbent and former officers, directors, owners, members, managers, shareholders, investors, agents, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities.

**1.30**  **Settlement Claims Administrator.**  "Settlement Claims Administrator" means the qualified administrator selected pursuant to Sections 2.2 to mail the Notices as well as any other duties pursuant to Section 2.2. The Settlement Claims Administrator's fees and costs shall be borne by the Gross Settlement Fund.

**1.31**  **Settlement Checks.**  "Settlement Checks" means checks issued to Authorized Claimants for their share of the Net Settlement Fund calculated in accordance with this Agreement – or otherwise referred to as their Individual Net Amount.

## 2.  PROCEDURAL ISSUES

**2.1**  **Settlement Class.**  For purposes of settlement only, the Parties agree to class certification pursuant to F.R.C.P. 23 and 29 U.S.C. § 216(b) to include all Class Members and FLSA Collective Members, respectively.

**2.2**  **Settlement Claims Administrator.**

(A)  **Retention.**  Within twenty-one (21) days after the filing of a Motion for Preliminary Approval, the Parties shall engage a Settlement Claims Administrator.

(B) **Funding Settlement Claims Administrator.** The Settlement Claims Administrator's costs and expenses shall be paid from the Gross Settlement Fund as approved by the Court.

(C) **Responsibilities of Settlement Claims Administrator.** The Settlement Claims Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Notice and Claim Forms, (ii) performing a skip trace and resending, within one (1) day of receipt, any Notice and Claim Form returned without a forwarding address or resending to those with a new forwarding address; (iii) responding to inquiries from respective parties regarding requests or communications made by the Parties; (iv) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from Class Members that the Settlement Claims Administrator receives; (v) receiving, retaining and reviewing the Claim Forms submitted by Class Members; (vi) providing Defendants' Counsel with copies of all Claim Forms submitted by Class Members so that Defendants can file the Claim Forms for the FLSA Collective with the Court; (vii) keeping track of requests for exclusion, objection or otherwise including maintaining the original mailing envelope in which the request was mailed; viii) responding to inquiries of members of the Settlement Class regarding procedures for filing objections, opt-out forms, and Claim Forms; (ix) referring to Class Counsel all inquiries by Class Members or Authorized Claimants regarding matters not within the Settlement Claim Administrator's duties specified herein; (x) responding to inquiries of Class Counsel, and Defendants' Counsel consistent with the Settlement Claims Administrator's duties specified herein; (xi) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xii) maintaining adequate records of its activities, including the dates of the mailing of Notices and mailing and receipt of Claim Forms, returned mail and other communications and attempted written or electronic communications with Class Members; (xiii) confirming in writing to Class Counsel, Defendants' Counsel and the Court its completion of the administration of the Agreement; and, (xiv) such other tasks as the Parties mutually agree.

(D) **Responsibilities of Defendants.** Unless some or all of the following are assigned to the Settlement Claims Administrator, Defendant shall be responsible for: (i) calculating the amount of each Authorized Claimant's Settlement Check (to be confirmed by Plaintiffs' counsel); (ii) mailing all required tax forms to Authorized Claimants as provided herein; (iii) distributing all of the Settlement Checks to Authorized Claimants; (iv) calculating and remitting the employer's share of payroll taxes attributable to settlement payments, and preparing appropriate tax forms for Defendants and for each Authorized Claimant; (vi) distributing the Fee Award to Class Counsel; (vii) distributing the Service Awards to Named Plaintiffs.

(E)  **Access to the Settlement Claims Administrator.** The Parties will have equal access to the Settlement Claims Administrator throughout the claims administration period.

## 2.3  Preliminary Approval Motion.

(A)  Within ten (10) days of execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion") which shall include (1) the proposed Notice and Claim Form attached hereto as Exhibit A (2) the proposed Preliminary Approval Order, which shall be drafted by Class Counsel and approved by Defendants, (3) an executed version of this Agreement, and (4) the necessary documents, memorandum, affidavits and exhibits for the purposes of certifying a Class under F.R.C.P. 23 and a Collective under 29 U.S.C. § 216(b) for settlement purposes only, and preliminarily approving the Agreement. Defendants may review the terms of the Preliminary Approval Motion and attachments to ensure they are consistent with this Agreement prior to it being filed. Defendants may also review the proposed Preliminary Approval Order prior to the Agreement being executed, and any other documents filed in connection with the Preliminary Approval Motion at least three (3) days prior to filing. The Preliminary Approval Motion also will seek the setting of a date for individuals to submit Claim Forms, opt-out of this Agreement and/or provide objections to this Agreement, which date will be forty-five (45) days from the initial mailing of Notice and Claim Forms to the Class Members by the Settlement Claims Administrator, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(B)  Plaintiffs will file the Motion for Preliminary Approval as "unopposed."

## 2.4  Notice and Claim Forms to Class Members.

(A)  **Class List to Settlement Claims Administrator.** Within fifteen (15) days of the Preliminary Approval Order being executed by the Court, Defendants' Counsel shall provide the Settlement Claims Administrator with the Class List. All information provided regarding the Class Members will be treated as confidential information by the Settlement Claims Administrator and may not be used by the Settlement Claims Administrator for any purpose other than to effectuate the terms of settlement. The Settlement Administrator shall not include a list of Authorized Claimants in any affidavit filed in support of approval of this settlement. At the same time that Defendants provide the Class List to the Settlement Administrator, they will also provide this information to Plaintiffs' Counsel.

(B) **Notice.** The Notice will inform Class Members about this Agreement and will also advise them of the opportunity to object, opt-out, participate by filing a Claim Form to join in the settlement, and/or appear at the Fairness Hearing. Within forty (40) days of the entry of the Preliminary Approval Order or as otherwise ordered by the Court, the Settlement Claims Administrator shall mail to all Class Members, via First Class United States Mail, the Court–approved Notices and Claim Forms – as authorized by the Court in the Preliminary Approval Order.

(C) **Skip Trace and Re-mailing.** In the event that a Claim Form mailed to a Class Member is returned as undeliverable, the Settlement Claims Administrator shall take reasonable steps to obtain the correct address of such Class Member, including one skip trace, and shall attempt a re-mailing provided it obtains a more recent address. The Settlement Claims Administrator shall also mail a Notice and Claim Form to any Class Member who contacts the Settlement Claims Administrator or Class Counsel during the time period between the initial mailing of the Class Notice and the Bar Date and requests a Notice and Claim Form. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of the number of Notice and Claim Forms sent to a Class Member that is returned as undeliverable, as well as the number of any such Notice and Claim Form returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement. Reasonable costs of locating Class Members will be paid from the Gross Settlement Fund.

(D) **Bar Date.** Class Members that send their Claim Forms by the Bar Date will be deemed Authorized Claimants. To be effective for the purposes of becoming an Authorized Claimant, a Claim Form must be post-marked as mailed by the Bar Date and include a signature in the designated area. The Bar Date shall be (i) forty-five (45) days from the date of the initial mailing or as otherwise set by the Court, with (ii) an additional twenty-five (25) days for any Class Members who did not receive the Notice, or were unable to file the Claim Form within forty-five (45) days due to such factors as change of address, military service, hospitalization, or other extraordinary circumstances.

(E) For purposes of this Agreement, the Named and Opt-in Plaintiffs are deemed to be Authorized Claimants, and are not required to file a Claim Form.

**2.5 Class Member Opt-outs.**

(A) Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the Settlement, and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt-out such as: "I opt out of the Nello wage and hour settlement." ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked by the Bar Date.

(B) The end of the time period to opt-out of the settlement ("Opt-out Period") shall be on or before the Bar Date.

(C) The Settlement Claims Administrator will stamp the received date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt. The Settlement Claims Administrator shall provide all Opt-Out Statements in its compliance affidavit to be filed with the Application for Final Approval. The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(D) Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Approval Order in this case, and have any Released Class Claims released and dismissed with prejudice. Only those Class Members who timely complete and return a Claim Form post-marked by the Bar Date will be deemed Authorized Claimants. Defendants shall fund only the amounts allocated to each Authorized Claimant who returns a timely Claim Form as set forth in this Agreement. Defendants shall have no obligation to pay or fund any amounts allocated to Class Members who do not submit a timely Claim Form as set forth in this Agreement. For purposes of this Agreement, the Named and Opt-in Plaintiffs are deemed to be Authorized Claimants, and are not required to return or execute a Claim Form.

**2.6 Objections to Settlement.**

(A) Class Members who wish to present objections to the settlement or the Agreement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail post-marked by the Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address and telephone numbers for the Class Member making the objection. The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection, supporting documents,

as well as a copy of the notice and share form mailed to the Objector, to Class Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection. The Settlement Claims Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Opt-out Period.

(B)     An Objector has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time.

(C)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing or, for objections filed after that deadline, as soon as is practicable.

## 2.7    Fairness Hearing and Application for Final Approval and Dismissal.

(A)     After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file supporting documents and materials for Final Approval of the settlement ("Application for Final Approval"). The Application for Final Approval may contain a compliance affidavit from the Settlement Claims Administrator, an application for attorneys' fees, and supporting affidavit and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the Settlement or any aspect related to this Agreement. The Application for Final Approval may also include a proposed Final Approval Order. All documents shall be provided to Defendants' Counsel at least ten (10) days prior to the Final Fairness Hearing for their review and approval.

(B)     At the Fairness Hearing and through the Application for Final Approval, the Parties shall request that the Court, among other things: (1) certify the Class and the FLSA Collective for purposes of settlement only; (2) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the Settlement; (3) Nello to distribute Settlement Checks to the Authorized Claimants, including Service Awards, if any, to be paid to certain Class Members as described in this Agreement; (4) order Nello to pay Costs and Fees; (5) order the dismissal with prejudice of all Released Class Claims asserted in the Litigation, including the claims of all Class Members who did not opt-out; (6) order entry of the Final Approval Order in accordance with this Agreement; and (7) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

## 2.8    Termination of Agreement

(A) **Grounds for Settlement Termination.** Either Party may terminate the Agreement if the Court declines to enter the Preliminary Approval Order or Final Approval Order, except if the Court declines to enter the Preliminary Approval Order or Final Approval Order due solely to the amount of attorneys' fees sought by Class Counsel. This Agreement is not contingent upon approval by the Court of Class Counsel's application for attorneys' fees, and if the Court approves the settlement payment amount allocated to the Authorized Claimants as set forth in this Agreement, but not the application for attorneys' fees, (i) the Agreement may not be terminated, and (ii) any Court-required reduction of the attorneys' fees will be reallocated to Defendants. The Defendants may not oppose (a) an application for Fees and Costs of up to $114,166.66, (b) a motion for reconsideration of such application, and/or (c) an appeal regarding Class Counsels' application for attorneys' fees.

(B) **Defendants' Right to Terminate.** In addition to the grounds for settlement termination stated above, Defendants may terminate this Agreement in the event that: 1) any current Plaintiff or individual who has already filed a consent to join refuses to sign the Settlement Agreement; or, 2) 10% or more of the Class Members submit Opt-out Statements in accordance with Section 2.5.

(C) **Procedures for Termination.** To terminate this Agreement, the terminating Party shall give written notice to the other Party via email and overnight mail as follows:

    (1) **Settlement Termination under 2.8 (A).** Within fifteen (15) calendar days after the Court either declines to enter the Preliminary Approval Order or Final Approval Order.

    (2) **Settlement Termination under 2.8 (B).** Within twenty-one (21) calendar days of the Bar Date as defined in Section 1.4.

(D) **Effect of Termination.** Termination shall have the following effects:

    1. The Agreement shall be terminated as to the affected Parties and shall have no force or effect.

    2. Nello shall have no obligation to make any payments to any party, Class Member, Authorized Claimant, or Class Counsel. However, the parties shall share equally (i) the costs and fees associated with the Settlement Claims Administrator subsequent to the signing of this Agreement, and (ii) if applicable because Notice already has mailed, the costs and expenses of the Settlement Claims Administrator associated with the mailing of a termination notice advising Class Members of the settlement termination. In the event Defendants terminate the Agreement under Section 2.8 (B),

any reasonable expenses incurred by the Settlement Administrator prior to or in connection with the termination shall be borne by Defendants.

3. If the Court grants preliminary approval but not final approval, the Settlement Claims Administrator will provide a Court approved notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail.

4. The Parties may jointly or individually seek reconsideration of a ruling by the Court declining to enter the Preliminary Approval Order or Final Approval Order in the form submitted by the Parties, or to seek Court approval of a renegotiated settlement.

5. The Litigation will resume as if no settlement had been attempted and the Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the action prior to the entering of this Agreement. The parties shall have a minimum of sixty (60) days to complete discovery. Defendants retain the right to contest whether the Litigation should be maintained as a class or collective action, and to contest the merits of the claims being asserted in the Litigation. The Preliminary Order approving the settlement and certifying the class for settlement purposes only shall be null and void and the case may only be certified if Plaintiffs are granted class or collective certification after full briefing on a motion for such certification.

## 3. SETTLEMENT TERMS

### 3.1 Settlement Amount.

(A) Defendants agree to pay a maximum Settlement Amount of Three Hundred Forty-Two Thousand Five Hundred Dollars ($342,500.00), which shall be used for allocation and calculation purposes to fully resolve and satisfy (1) any claim for Costs and Fees as approved by the Court, and (2) any and all amounts to be paid to all Authorized Claimants.

(B) **Default.** A default under this Agreement shall be considered to have occurred if Defendants fail to make any scheduled payment within ten (10) business days of the due date for such payment pursuant to Section 3.1 ("Default"). Following any Default, the Settlement Claims Administrator or Class Counsel shall send notice of the Default by email and overnight mail (or by certified mail) (the "Default Notice") to Defendants' Counsel. Defendants shall have ten (10) days from its receipt of the Default Notice to cure the Default. If the Default is not timely cured within that ten (10) day period, Defendants shall reimburse reasonable fees

and costs associated with Class Counsel's recovery of the scheduled payment, as awarded by the Court.

(C) **Funding.** Defendants shall make payments totaling one-half (1/2) of the total sum owed under this Agreement within thirty (30) days of the Final Effective Date. From this amount, Nello (or the Settlement Claims Administrator if Defendants so elect) shall distribute one-half (1/2) of each Authorized Claimant's share under this Agreement as well as one-half (1/2) of the Fee Award, within seven (7) days thereafter. Three (3) months following the initial payment, Nello (or the Settlement Claims Administrator if Defendants so elect) shall make payments totaling funding one-fourth (1/4) of the total sum owed under this Agreement, to be distributed in the same manner. Three (3) months following the second lump sum payment, Nello (or the Settlement Claims Administrator if Defendants so elect) shall make the final payments totaling one-fourth (1/4) of the total sum owed under this Agreement, to be distributed in the same manner.

(D) **Reversion.** Any uncashed Settlement Checks or Service Awards which remain uncashed three (3) months after the mailing of the last Settlement Checks will revert to Defendants. For purposes of this provision, the mailing date shall be deemed to be the date posted on the Settlement Checks.

(E) **Maximum Amount.** The Parties expressly acknowledge that Nello shall not be required to pay more than the Settlement Fund of Three Hundred Forty-Two Thousand Five Hundred Dollars ($342,500.00) to the Authorized Claimants, Class Counsel, the Named Plaintiffs or anyone else regardless of the aggregate amount of claims that are filed.

(F) All settlement payments to Authorized Claimants shall be deemed to be paid to such Authorized Claimants solely in the year in which such payments actually are received by the Authorized Claimants. The receipt of any settlement payment will not entitle any Authorized Claimant to additional compensation or benefits under any of Defendants' bonus, profit-sharing, or other compensation or benefit plans or agreements in place at the time of such payment or in effect at any time during the Covered Period, nor will it entitle any Authorized Claimant to any increased retirement, 401K benefits, matching benefits or deferred compensation benefits. The payments provided for hereunder are the sole payments to be made by Defendants to the Authorized Claimants, and that the Authorized Claimants are not entitled to any new, further or additional compensation or benefits as a result of having received the payments hereunder (notwithstanding any contrary language or agreement in any benefit or compensation plan document that may now or might have been in effect during the Covered Period).

## 3.2 Mailing of Settlement Checks

(A)   Defendants (or the Settlement Claims Administrator if Defendants so elect) shall mail the Settlement Checks to Authorized Claimants, Settlement Claims Administrator check, and Class Counsels' checks to pay for all Court-approved Costs and Fees as reflected in Section 3.1.

## 3.3   Attorneys' Fees, Expenses and Costs.

(A)   At the Fairness Hearing and through the Application for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees, costs and expenses ("Fee Award"), of no more than One Hundred Fourteen Thousand One Hundred Sixty Six Dollars and Sixty Six Cents ($114,166.66). Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

(B)   The substance of Class Counsel's application for attorneys' fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

(C)   The attorneys' fees, expenses and costs shall be paid at the time the payments to Authorized Class Claimants are made in accordance with Section 3.1 above.

## 3.4   Service Awards and Other Payments to Named Plaintiffs.

(A)   In return for services rendered to the Class Members and Authorized Claimants, the Named Plaintiffs as defined above will apply to the Court to receive no more than Eight Thousand Five Hundred Dollars ($8,500.00) each as Service Awards from the QSF.

(B)   The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval, Final Approval Order or the fairness or reasonableness of settlement. Defendants may not oppose Named Plaintiffs' application for Service Awards.

## 3.5   Net Settlement Fund and Allocation to Authorized Claimants.

Authorized Claimant's individual Settlement Check amounts shall be computed according to the following method:

A. An Authorized Claimant's proportionate share of the Net Settlement Fund shall be determined by Defendants' Counsel and confirmed by Class Counsel pursuant to the formula set forth below:

    (1) Payments from the Net Settlement Fund shall be paid to Authorized Claimants who worked during the period of August 19, 2009 through the date this Agreement is signed;

    (2) All Class Members will receive one point for each week worked for Nello between August 19, 2009 and the date this Agreement is signed;

    (3) The Net Settlement Fund will be divided by the aggregate number of points accrued by all of the Class Members during the period of August 19, 2009 through the date this Agreement is signed. ("Point Value").

    (4) Each Authorized Claimant's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount.

    (5) No Authorized Claimant shall receive less than $100.00. If any Authorized Claimant's Individual Settlement Amount under this formula is less than $100.00, that Authorized Claimant's Individual Settlement Amount will be increased to $100.0, with the difference subtracted from the Net Settlement Fund, and all other Authorized Claimants' Individual Settlement Amounts recalculated according to the formula set forth above to account for the difference.

B. Nello will pay the employer's share of taxes in addition to the Net Settlement Fund. Any portion of the taxes on the unclaimed money will revert back to Defendants.

### 3.6 Tax Characterization.

    (A) For tax purposes, 33% of payments to Authorized Claimants pursuant to Section 3.5 shall be treated as W-2 wage payments and the remainder of such payments shall be treated as 1099 non-wage income as liquidated damages, statutory penalties and interest.

    (B) Payments treated as W-2 wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and

social security number on an IRS Form W-2. Payments treated as liquidated damages, statutory penalties and interest shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees, costs and expenses pursuant to Section 3.3 shall be made without withholding. Class Counsel will receive a Form 1099 for this payment. Any Service Awards made pursuant to Section 3.4 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C) The employee portion of all applicable payroll taxes shall not be Defendants' responsibility. Any tax responsibility for the non-wage portion of the payments to Qualified Class Members shall not be Defendants' responsibility.

## 4. RELEASE

### 4.1 Release of Claims.

(A) By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member, who does not timely opt-out pursuant to this Agreement, on his or her behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Releasees, as well as their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsurers, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them, from all wage and hour claims asserted, or wage and hour claims that could have been asserted, under federal or state laws or common law by and on behalf of the Class Members in the Litigation. The Released Claims include all claims under federal or state law (including but not limited to the laws of New York) for minimum or overtime wages, spread-of-hours, failure to provide proper wage notices and/or statements, unlawful deductions, uniform expenses, any related wage and hour claims, all claims for gratuities, and all claims for statutory penalties for failure to comply with the Wage Theft Prevention Act, interest on such claims, and attorneys' fees and costs related to such claims through the date of the Preliminary Approval Order.

For those Individual Class Members who return their Claim Forms by the Bar Date who were employed by Defendants during the period beginning three (3) years prior the filing of the Litigation, Released Claims shall also include all claims under the Fair Labor Standards Act for minimum or overtime wages, claims for liquidated damages, interest, attorneys' fees and costs. Defendants' Counsel shall file the Claim Forms for such Class Members with the Court, in

conformity with 29 U.S.C. § 216(b) and this Agreement, redacting any personal or confidential information.

(B)     Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, Class Counsel and Plaintiffs, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees, expenses or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

## 4.2 Denial of Liability & Confidentiality

(A)     Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, nor as an admission that a class should be certified for any purpose in this case other than settlement purposes.

(B)     No Party shall make any statement to the media relative to this settlement, other than "The matter has been resolved." Class Counsel has agreed to not specifically identify the Litigation or Defendants in any marketing or promotional materials.

## 5.     INTERPRETATION AND ENFORCEMENT

**5.1     Cooperation Between the Parties; Further Acts.**   The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2     No Assignment.** Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3     Entire Agreement Regarding Resolution of Wage-and-Hour Claims.**   This Agreement constitutes the entire agreement between the Parties with regard to the resolution of wage-and-hour claims, and shall be interpreted under New York law to effect a full settlement and release of all such claims, whether known or unknown, asserted or unasserted, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.4** **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.5** **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.6** **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7** **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.8** **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Parties shall not petition the Court to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

**5.9** **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.10** **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.11** **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

**5.12** **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature

page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**5.13** **Construction**. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

Dated: July 26 2017                    Madison Global LLC, d/b/a Nello

                                       By: _____

                                       Its: _____

Dated: July 26 2017                    _____
                                                Alexandru Surdu

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF _Rockland_  )

        On the 26 day of July, 2017, before me, the undersigned notary, Alexandru Surdu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Surdu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20 18

_____
Signature and Office of individual
taking acknowledgment

Dated: July ___, 2017                  _____
                                                Dino Tito

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF _____    )

        On the ___ day of July, 2017, before me, the undersigned notary, Dino Tito personally appeared and proved to me, on the basis of satisfactory evidence, established

that he is executing this Settlement Agreement and General Release. Mr. Tito advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

Dated: July 2017

Signature and Office of individual taking acknowledgment

Anastasia Mayfat

STATE OF NEW YORK )
) ss.:
COUNTY OF Rockland )

On the 2 day of July, 2017, before me, the undersigned notary, Anastasia Mayfat personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release. Ms. Mayfat advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees. She also confirms her complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

Signature and Office of individual taking acknowledgment

Dated: July 2017

Ciprian Grosu

STATE OF NEW YORK )
) ss.:
COUNTY OF Rockland )

On the 2 day of July, 2017, before me, the undersigned notary, Ciprian Grosu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Grosu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

Signature and Office of individual

taking acknowledgment

Dated: July 2017

_____
Luis Lopez

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF Rockland )

On the 2_ day of July, 2017, before me, the undersigned notary, Luis Lopez personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Lopez advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

_____
Signature and Office of individual
taking acknowledgment

4811-7459-6158, v. 5

21

deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**5.13  Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

Dated: July 2̸6̸ᵗʰ 2017

Madison Global LLC, d/b/a Nello

By:_____

Its:_____

Dated: July 2̸6̸ᵗʰ 2017

_____
Alexandru Surdu

STATE OF NEW YORK          )
                                             ) ss.:
COUNTY OF _Rockland_        )

On the 2̸6̸ᵗʰ day of July, 2017, before me, the undersigned notary, Alexandru Surdu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Surdu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

_____
Signature and Office of individual
taking acknowledgment

Dated: July 28, 2017

_____
Dino Tito

STATE OF NEW YORK          )
                                             ) ss.:
COUNTY OF _____          )

On the ___ day of July, 2017, before me, the undersigned notary, Dino Tito personally appeared and proved to me, on the basis of satisfactory evidence, established

**5.11    Signatures.**  This Agreement is valid and binding if signed by the Parties' authorized representatives.

**5.12    Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**5.13    Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

Dated: ~~December~~July     , 20~~17~~76                      Madison Global LLC, d/b/a Nello

By: _____

Its: _____


Dated: ~~December~~July     , ~~2016~~2017

                                        Alexandru Surdu

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF _____      )

            On the __ day of ~~December~~July, 20~~17~~76, before me, the undersigned notary, Alexandru Surdu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release.  Mr. Surdu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees.  He also confirms his complete understanding of this Agreement and the lack of need of translation services.

                              _____
                              Signature and Office of individual
                              taking acknowledgment


Dated: ~~December~~July     , 20~~17~~76

_____

20

# EXHIBIT A-1

# AGREEMENT AND GENERAL RELEASE

**Madison Global LLC, d/b/a Nello** ("Nello") and **Thomas Makkos** ("Makkos," together with Nello collectively referred to throughout this Agreement as the "Employer"), and **Alexandru Surdu**, his heirs, executors, administrators, successors, and assigns (hereinafter "Surdu"), **Dino Tito**, his heirs, executors, administrators, successors, and assigns (hereinafter "Tito"), **Anastasia Mayfat**, her heirs, executors, administrators, successors, and assigns (hereinafter "Mayfat"), **Ciprian Grosu**, his heirs, executors, administrators, successors, and assigns (hereinafter "Grosu") and **Luis Lopez** his heirs, executors, administrators, successors, and assigns (hereinafter "Lopez") (Surdu, Tito, Mayfat, Grosu and Lopez are collectively referred to throughout this Agreement as the "Employees," and collectively with the Employer are referred to as the "Parties"), agree that:

1. **Consideration.**

   a. In consideration for signing this Agreement and General Release, and complying with the terms and conditions here, Nello, or its designee, agrees to pay the Employees Seven Thousand Five Hundred Dollars ($7,500), as follows:

      i. A check made payable to "Alexandru Surdu" in the amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), which shall not be subject to withholdings, and for which a Form 1099 will be issued;

      ii. A check made payable to "Dino Tito" in the amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), which shall not be subject to withholdings, and for which a Form 1099 will be issued;

      iii. A check made payable to "Anastasia Mayfat" in the amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), which shall not be subject to withholdings, and for which a Form 1099 will be issued;

      iv. A check made payable to "Ciprian Grosu" in the amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), which shall not be subject to withholdings, and for which a Form 1099 will be issued; and

      v. A check made payable to "Luis Lopez" in the amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), which shall not be subject to withholdings, and for which a Form 1099 will be issued.

   b. Nello, or its designee, agrees to make the payments above within ten (10) days after the latter of the date on which: 1) Nello receives a copy of this Agreement and General Release signed by all five Employees and 2) Employees' Class and Collective Action Lawsuit filed with the

United States District Court for the Southern District of New York, Case No. 15-cv-6567(PGG) (the "*Surdu* Litigation"), is dismissed with prejudice.

c. All payments shall be delivered simultaneously to The Klein Law Group, P.C., Attn: Darren Rumack, Esq., 39 Broadway, Suite 1530, New York, NY 10006, (212)-344-9022.

    2.    **No Consideration Absent Execution of this Agreement.** Employees understand and agree that Employees would not receive the monies and/or benefits specified in Section "1" above, except for Employees' execution of this Agreement and General Release and the fulfillment of the promises contained herein.

    3.    **General Release of All Claims**. Employees knowingly and voluntarily releases and forever discharge Employer, its owners, shareholders, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, including, but not limited to (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employees have or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);
- The Genetic Information Non-discrimination Act;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The New York State Executive Law (including its Human Rights Law);
- The New York City Administrative Code (including its Human Rights Law);
- Any other federal, state or local civil, human rights, bias, whistleblower, discrimination, retaliation, compensation, employment, labor or other local, state or federal law, regulation or ordinance;
- Any amendments to the foregoing laws;
- Any benefit, payroll or other plan, policy or program;
- Any public policy, contract, third-party beneficiary, tort or common law claim; or,
- Any claim for costs, fees, or other expenses including attorneys' fees, not including those described in paragraph one (1), above.

Employee is not waiving any rights he or she may have to: (i) his or her own vested accrued employee benefits under any applicable Nello health, welfare, or retirement benefit plans as of the last day of employment; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; (iv) enforce this Agreement; and/or (v) challenge the validity of this Agreement;

Nothing in this Agreement and General Release prohibits or prevents Employees from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board or a similar agency enforcing federal, state or local anti-discrimination laws. However, to the maximum extent permitted by law, Employees agree that if such an administrative claim is made to such an anti-discrimination agency, Employees shall not be entitled to recover any individual monetary relief or other individual remedies. In addition, nothing in this Agreement and General Release, including but not limited to the release of claims nor the confidentiality and non-disparagement clauses, prohibits Employees from: (1) reporting possible violations of federal law or regulations, including any possible securities laws violations, to any governmental agency or entity, including but not limited to the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Congress, or any agency Inspector General; (2) making any other disclosures that are protected under the whistleblower provisions of federal law or regulations; or (3) otherwise fully participating in any federal whistleblower programs, including but not limited to any such programs managed by the U.S. Securities and Exchange Commission and/or the Occupational Safety and Health Administration. Moreover, nothing in this Agreement and General Release prohibits or prevents Employees from receiving individual monetary awards or other individual relief by virtue of participating in such federal whistleblower programs, as applicable.

    4.   **Non-Disparagement**. Employees agree that they will not make any comments or perform any acts, directly or indirectly, that are critical, disparaging, derogatory or that may tend to injure the business or reputation of the Releasees. Reciprocally, Employer agrees that Makkos will not make any comments or perform any acts, directly or indirectly, that are critical, disparaging, derogatory or that may tend to injure the business or reputation of Employees. Nothing in this Paragraph 4 shall be read to preclude either Party from making truthful statements.

    5.   **Acknowledgments and Affirmations**.

    (a)   Employees affirm that they have not filed, caused to be filed, or presently are a party to any claim against Employer, except the *Surdu* Litigation.

    (b)   Employees affirm that through this Agreement and the Settlement Agreement and Release resolving the *Surdu* Litigation, they have been paid and/or have received all compensation, wages, bonuses, commissions, other monies, and/or benefits to which Employees may be entitled for work performed and that no other compensation, wages, bonuses, commissions, benefits or other monies are due. Employees affirm that they have been granted any leave to which they were entitled under the Family and Medical Leave Act or related state or

3

local leave or disability accommodation laws.

(c)     Employees affirm that they have no known workplace injuries or occupational diseases.

(d)     Employees further affirm that they have not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud, except for the allegations asserted in the *Surdu* Litigation (as applicable), which claims they agree are waived herein. Both Employer and Employees acknowledge that this Agreement does not limit either party's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental agency. To the extent permitted by law, Employees agree that if such an administrative claim is made, Employees shall not be entitled to recover any individual monetary relief or other individual remedies.

(e)     Employees affirm that each is not a Medicare or Medicaid beneficiary as of the date of this Agreement and, therefore, no conditional payments have been made by Medicare or Medicaid.

6.     **Governing Law and Interpretation.**     This Agreement and General Release shall be governed and conformed in accordance with the laws of the State of New York without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

7.     **Nonadmission of Wrongdoing.**     The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

8.     **Neutral Reference.**     Nello agrees that it will provide a neutral response to any third-party requests for employment references for Employees, consisting solely of Employees' dates of employment, job title(s), and job duties. If a third-party requests any additional information, Nello will inform the requestor that further information is not permitted pursuant to its policies. Employees will direct any requests for a reference to Mr. Makkos.

10.     **Amendment**.     This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

11.     **Entire Agreement.**     This Agreement and General Release and the Settlement Agreement and Release resolving the *Surdu* Litigation set forth the entire agreement

4

between the Parties hereto, and fully supersede any prior agreements or understandings between the Parties.

        12.   **Counterparts**. This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute on and the same instrument.

        13.   **Competency to Waive Claims**. Employees confirm that each is competent to affect a knowing and voluntary general and unlimited release of all claims, as contained herein, and to enter into this Agreement. They are not affected or impaired by illness, use of alcohol, drugs, medication or other substances or otherwise impaired. To the contrary, they have a clear and complete understanding of this Agreement. Employees are not a party to any bankruptcy, lien, creditor-debtor or other proceeding which would impair their right to settle all claims, to waive all claims and to indemnify Releasees from any claims by or relating to Employees.

        14.   **Execution**.

        (a)   The terms of this Agreement are the product of mutual negotiation and compromise between the Parties. The meaning, effect and terms of this Agreement have been fully explained to Employees by their counsel, The Klein Law Group, P.C. Employees fully understand that this Agreement generally releases, settles, bars and waives any and all claims that Employees possibly could have against Releasees. Employees further represent that they are fully satisfied with the advice and counsel provided by The Klein Law Group, P.C.

        (b)   Employees also confirm that they have not been induced by any representation or promise that does not expressly and unequivocally appear in this Agreement or by any act or omission of Releasees to execute this Agreement and was not caused to sign this Agreement without the opportunity for or actual consultation with counsel.

        (c)   Employees fully understand the terms of this Agreement and do not require translation service or other assistance.

        15.   **Revocation**. Each Employee who is forty years of age or older at time of signing this Agreement may revoke this Agreement for a period of seven (7) calendar days following the day such Employee signs this Agreement. Any revocation within this period must be submitted, in writing to Noel P. Tripp, Esq., Jackson Lewis P.C., 58 South Service Rd., Suite 250, Melville, New York 11747 and state, "I hereby revoke my acceptance of our agreement and general release." The revocation must be personally delivered to Noel P. Tripp or his designee or mailed to Noel P. Tripp and Postmarked within seven (7) calendar days after such Employee signs this Agreement and General Release. If any Employee revokes his or her acceptance pursuant to this Paragraph, this Agreement is revoked as to all.

**EMPLOYEES ARE ADVISED THAT EACH HAS UP TO TWENTY-ONE**

(21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEES ALSO ARE ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT AND CONFIRM THAT THEY HAVE DONE SO AND ARE SATISFIED WITH THE ADVICE OF THEIR COUNSEL, KLEIN LAW GROUP.

EMPLOYEES AGREE THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.

HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS SET FORTH ABOVE, EMPLOYEES FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH THEIR COUNSEL, DARREN RUMACK OF KLEIN LAW GROUP, ESQ., ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE THE CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Agreement as of the date set forth below:

Dated: July __, 2017                    Madison Global LLC, d/b/a Nello

                                        By:_____

                                        Its:_____

Dated: July 20th, 2017                  _____
                                                Alexandru Surdu

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF _Rockland_   )

On the 20th day of July, 2017, before me, the undersigned notary, Alexandru Surdu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Surdu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

                                        _____
                                        ANA E. RIOS
                                        NOTARY PUBLIC, State of New York
                                        No. 01RI6156593
                                        Qualified in Rockland County
                                        Commission Expires Dec. 4, 20__

6

Signature and Office of individual
taking acknowledgment

Dated: July __, 2017

_____

Dino Tito

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF _____ )

On the __ day of July, 2017, before me, the undersigned notary, Dino Tito personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Tito advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____

Signature and Office of individual
taking acknowledgment

Anastasia Mayfat

Dated: July ____ 2017

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF Rockland )

On the ___ day of July, 2017, before me, the undersigned notary, Anastasia Mayfat personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release. Ms. Mayfat advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees. She also confirms her complete understanding of this Agreement and the lack of need of translation services.

_____

Signature and Office of individual
taking acknowledgment
ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

7

Dated: July 21, 2017

_____
Ciprian Grosu

STATE OF NEW YORK )
                        ) ss.:
COUNTY OF Rockland )

       On the 21 day of July, 2017, before me, the undersigned notary, Ciprian Grosu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Grosu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

_____
Signature and Office of individual
taking acknowledgment

Dated: July 21, 2017

_____
Luis Lopez

STATE OF NEW YORK )
                        ) ss.:
COUNTY OF Rockland )

       On the 21 day of July, 2017, before me, the undersigned notary, Luis Lopez personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Lopez advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

_____
Signature and Office of individual
taking acknowledgment

4819-9842-1579, v. 4

8

Dated: July 2 2017

_____
Dino Tito

STATE OF NEW YORK )
                         ) ss.:
COUNTY OF _____ )

      On the __ day of July, 2017, before me, the undersigned notary, Dino Tito personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Tito advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

                                       _____
                                       Signature and Office of individual
                                       taking acknowledgment

Dated: July 2017

                                       _____
                                       Anastasia Mayfat

STATE OF NEW YORK )
                         ) ss.:
COUNTY OF Rockland )

      On the 20 day of July, 2017, before me, the undersigned notary, Anastasia Mayfat personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release. Ms. Mayfat advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees. She also confirms her complete understanding of this Agreement and the lack of need of translation services.

                                       _____
                                       Signature and Office of individual
                                       taking acknowledgment

                                       ANA E. RIOS
                              NOTARY PUBLIC, State of New York
                                  No. 01RI6156593
                               Qualified in Rockland County
                            Commission Expires Dec. 4, 20__



The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Agreement as of the date set forth below:

Dated: July __, 2017

Madison Global LLC, d/b/a Nello

By: _____

Its: _____

Dated: July __, 2017

_____
Alexandru Surdu

STATE OF NEW YORK   )
                          ) ss.:
COUNTY OF _____   )

On the __ day of July, 2017, before me, the undersigned notary, Alexandru Surdu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Surdu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

Dated: July __, 2017

_____
Dino Tito

STATE OF NEW YORK   )
                           ) ss.:
COUNTY OF _____   )

On the __ day of July, 2017, before me, the undersigned notary, Dino Tito personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Tito advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

6

# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ALEXANDRU SURDU, DINO TITO,                :
ANASTASIA MAYFAT, CIPRIAN GROSU
and LUIS LOPEZ, on behalf of               :
themselves and those similarly
situated, <u>et al</u>.,                        :

                    Plaintiffs,            :

        -against-                          :

MADISON GLOBAL, LLC, d/b/a NELLO,          :
NELLO BALAN and THOMAS MAKKOS,

                                           :

                    Defendants.
                                           :
----------------------------------X



15 Civ. 6567 (HBP)

OPINION
AND ORDER

        PITMAN, United States Magistrate Judge:


I.  <u>Introduction</u>


        Plaintiffs Alexandru Surdu, Dino Tito, Anastasia

Mayfat, Ciprian Grosu and Luis Lopez, on behalf of themselves and

all others similarly situated, commenced this action pursuant to

the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 <u>et</u>

<u>seq</u>., and the New York Labor Law (the "NYLL") §§ 190 <u>et</u> <u>seq</u>.

against defendants Madison Global, LLC d/b/a Nello ("Nello"),

Nello Balan and Thomas Makkos to recover unpaid minimum wages,

misappropriated gratuities, uniform purchase and maintenance

costs and penalties for failure to provide wage statements and

notices.  Plaintiffs brought the action as a collective action

pursuant to 29 U.S.C. § 216(b) with respect to the FLSA claims
and as a class action with respect to the NYLL claims.  Following
the filing of the complaint, opt-in plaintiffs Gulnaz
Badakshanova, Constantine Haralabopolous, Bilguun Ganhuyag,
Francesco Desideri, Gian Maria Montoro, Stefano Naia, Adnan
Dibra, Susanna De Martino, Luca Federico and Juan Carlos Rios
consented to join the FLSA collective action.

By letter to the Honorable Paul G. Gardephe, United
States District Judge, dated September 30, 2016, the parties
informed the Court that they had reached a settlement of the FLSA
collective action and the NYLL class action (Letter from Noel P.
Tripp, Esq., to Judge Gardephe, dated Sept. 30, 2016 (Docket Item
("D.I.") 49)).  The parties subsequently memorialized their
agreement in a written settlement agreement (the "Settlement
Agreement").

Plaintiffs now move for preliminary approval of the
Settlement Agreement and other related relief.  Specifically,
plaintiffs seek an order (1) conditionally certifying a NYLL
class pursuant to Rule 23(a) and (b)(3); (2) appointing the Klein
Law Group, P.C. as class counsel; (3) preliminarily approving the
Settlement Agreement; (4) approving plaintiffs' proposed Notice
of Class Action Settlement (the "Proposed Notice") and (5)
scheduling a Fairness Hearing to consider the parties' motion for

2

final approval of the settlement, attorneys' fees and costs and a service award to Surdu, Tito, Mayfat, Grosu and Lopez (Notice of Plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement, dated July 28, 2017 (D.I. 66); Memorandum of Law in Support of Plaintiffs' Renewed Motion for Preliminary Approval of Settlement, dated July 28, 2017 (D.I. 67) ("Pl.'s Mem."), at 1).  The parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

For the reasons set forth below, plaintiffs' motion is granted.

## II.  Facts

### A.  Relevant Factual and Procedural Background

Surdu, Tito, Mayfat, Grosu and Lopez commenced this action on August 19, 2015.  The complaint alleges that the members of the FLSA collective and the putative NYLL class are or were employed by defendants as tipped "food service workers," which the complaint defines as "servers, bussers, runners, and bartenders" (Class and Collective Action Complaint, dated Aug. 11, 2015 (D.I. 1) ("Compl.") ¶¶ 1, 18).[1]  The complaint further

---

[1]The FLSA collective includes food service workers that
(continued...)

alleges that defendants (1) failed to pay the minimum wage by
improperly applying the FLSA and NYLL's tip credit allowance; (2)
unlawfully retained portions of the food service workers' tips
and distributed them to non-tip-eligible employees; (5) failed to
reimburse food service workers for uniform purchase and mainte-
nance costs and (6) failed to provide food service workers with
wage statements and notices as required by the NYLL (Compl. ¶¶
31-98).  Plaintiffs filed an amended complaint on May 10, 2016,
adding retaliation claims on behalf of Surdu and Tito (Stipula-
tion Regarding Plaintiffs' Proposed Amendment of Complaint, dated
May 9, 2016 (D.I. 38), Ex. A ("Amended Compl.") ¶¶ 75-88, 113-
33).

          The parties engaged in extensive discovery to develop
their claims and defenses.  Plaintiffs produced approximately
1,500 pages of documents, including tip sheets, pay stubs,
schedules, employee handbooks, dry cleaning receipts, disciplin-
ary write-ups and tax forms (Declaration of Darren P.B. Rumack,
Esq., dated July 28, 2017 (D.I. 68) ("Rumack Decl.") ¶ 15).
Defendants produced approximately 2,000 pages of documents,
including pay stubs, schedules and personnel files for the named

---

[1](...continued)
worked for defendants on or after August 19, 2012, and the NYLL
class includes food service workers that worked for defendants on
or after August 19, 2009 (Compl. ¶¶ 16, 25).

4

and opt-in plaintiffs (Rumack Decl. ¶ 16).  According to plain-
tiffs' calculations, plaintiffs and the putative class members
are owed approximately $375,000.00 in misappropriated tips
(Rumack Decl. ¶ 22).  Plaintiffs have not submitted any estimate
of the class's other elements of damages.

       In September 2016, the parties engaged in an arm's-
length negotiation during an hours-long mediation session with
mediator Ralph S. Berger, whom plaintiffs' counsel describes as
an "experienced and well-known mediator" in wage and hour cases
(Rumack Decl. ¶¶ 17-19).  At the mediation, following "several
hours of negotiations," the parties reached an agreement on the
settlement amount (Rumack Decl. ¶ 19).  The parties thereafter
negotiated the remaining terms of the settlement, which are
memorialized in the Settlement Agreement (Rumack Decl. ¶ 23;
Letter from Darren Rumack, Esq., to the undersigned, dated Aug.
25, 2017 (D.I. 72) ("Rumack Letter"), Ex. A).

       B.   The Settlement Agreement

       The Settlement Agreement provides that defendants,
without conceding the validity of plaintiffs' claims or admitting
liability, agree to create a common settlement fund of $342,500.-
00 (Rumack Letter, Ex. A § 3.1(A)).  From the settlement fund,
Surdu, Tito, Mayfat, Grosu and Lopez will each receive an

5

$8,500.00.00 service award, a settlement claims administrator will receive a fee[2] to administer the settlement and counsel for plaintiffs will receive no more than $114,166.66, or one-third of the total settlement amount, in attorneys' fees and costs, subject to the Court's approval (Rumack Letter, Ex. A §§ 1.10, 2.2(B), 3.3(A), 3.4(A)).

The Settlement Agreement provides that the claims administrator will allocate the remainder of the settlement proceeds to those class members who validly file a claim form ("Authorized Claimants") as follows:

> (2)  All Class Members will receive one point for each week worked for Nello between August 19, 2009 and the date [the] Agreement is signed[.]
>
> (3)  The Net Settlement Fund will be divided by the aggregate number of points accrued by all of the Class Members during the period of August 19, 2009 through the date this Agreement is signed.  ("Point Value").
>
> (4)  Each Authorized Claimant's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount.
>
> (5)  No Authorized Claimant shall receive less than $100.00.  If any Authorized Claimant's Individual Settlement Amount under this formula is less than $100.00, that Authorized Claimant's Individual Settle-ment Amount will be increased to $100.0[0], with the difference subtracted from the Net Settlement Fund, and all other Authorized Claimants' Individual Settlement

---

[2]The Settlement Agreement does not specify the amount of the fee that will be paid to the settlement claims administrator.

Amounts recalculated according to the formula set forth
above to account for the difference.

(Rumack Letter, Ex. A §§ 1.2, 3.5(A)).  Any portion of the net

settlement amount not claimed by class members will revert to

defendants (Rumack Letter, Ex. A § 3.5(B)).  For tax purposes,

settlement checks paid to class members will be allocated 33% to

W-2 wage payments and 67% to 1099 non-wage payments for interest,

liquidated damages and statutory penalties (Rumack Letter, Ex. A

§ 3.6(A)).

Additionally, the Settlement Agreement provides that

upon final approval of the Settlement Agreement, each individual

who does not opt out of the class, including those who do not

submit a claim form, will release defendants from all wage and

hour claims that were brought, or could have been brought, in

this action through the date of this Order (Rumack Letter, Ex. A

§§ 1.28, 4.1(A)).

The Settlement Agreement also provides that neither

side shall make any statement to the media about the settlement,

other than "'[t]he matter has been resolved'" (Rumack Letter, Ex.

A § 4.2(B)).

Finally, the Settlement Agreement provides that either

party has the right to terminate the Settlement Agreement if I

decline to preliminarily or finally approve the Settlement

7

Agreement, except if the denial is solely due to attorneys' fees
(Rumack Letter, Ex. A § 2.8(A)).  Additionally, defendants have
the right to terminate the Settlement Agreement if ten percent or
more of the putative class members opt out (Rumack Letter, Ex. A
§ 2.8(B)).

III.  Analysis

    A.  Conditional Certification
        of the NYLL Rule 23 Class

        Plaintiffs request that the Court conditionally cer-
tify, for the purpose of settlement only, a class pursuant to
Rule 23 consisting of individuals who worked as servers, runners,
bussers and bartenders and who received tips at Nello from August
19, 2009 through the date of this Order.[3]

        "Before certification is proper for any purpose --
settlement, litigation, or otherwise -- a court must ensure that
the requirements of Rule 23(a) and (b) have been met."  Denney v.
Deutsche Bank AG, 443 F.3d 253, 270 (2d Cir. 2006); accord Manley
v. Midan Rest. Inc., 14 Civ. 1693 (HBP), 2016 WL 1274577 at *3

---

        [3]Individuals who meet this definition, but who have released
all claims against defendants as a result of settlements in cases
bearing docket numbers 09 Civ. 9940 (PAC) (S.D.N.Y.) and 12 Civ.
3060 (JPO) (S.D.N.Y.), would be excluded from this putative
class.

(S.D.N.Y. Mar. 30, 2016) (Pitman, M.J.); Long v. HSBC USA Inc.,
14 Civ. 6233 (HBP), 2015 WL 5444651 at *5 (S.D.N.Y. Sept. 11,
2015) (Pitman, M.J.); Cohen v. J.P. Morgan Chase & Co., 262
F.R.D. 153, 157-58 (E.D.N.Y. 2009).  Class certification under
Rule 23(a) requires that

> (1) the class is so numerous that joinder of all mem-
> bers is impracticable; (2) there are questions of law
> or fact common to the class; (3) the claims . . . of
> the representative parties are typical of the claims .-
> . . of the class; and (4) the representative parties
> will fairly and adequately protect the interests of the
> class.

"If each of these four threshold requirements are met,
class certification is appropriate if the action also satisfies
one of the three alternative criteria set forth in Rule 23(b)."
Long v. HSBC USA Inc., supra, 2015 WL 5444651 at *5; accord
Manley v. Midan Rest. Inc., supra, 2016 WL 1274577 at *3;
Lizondro-Garcia v. Kefi LLC, 300 F.R.D. 169, 174 (S.D.N.Y. 2014)
(Pitman, M.J.).  Here, plaintiffs argue that class certification
is proper under Rule 23(b)(3), which provides that a class action
may be maintained where

> the questions of law or fact common to class members
> predominate over any questions affecting only individ-
> ual members, and . . . a class action is superior to
> other available methods for fairly and efficiently
> adjudicating the controversy.

The party seeking class certification bears the burden
of establishing each of these elements by a "preponderance of the

9

evidence." Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008); see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Fedotov v. Peter T. Roach & Assocs., P.C., 354 F. Supp. 2d 471, 478 (S.D.N.-Y. 2005) (Haight, D.J.). Although the Second Circuit has "directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation," In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 504 (S.D.N.Y. 1996) (Sweet, D.J.), citing, inter alia, Korn v. Franchard Corp., 456 F.2d 1206, 1208-09 (2d Cir. 1972), class certification should not be granted unless, after a "'rigorous analysis,'" the court is satisfied that Rule 23's requirements have been met. Spagnola v. Chubb Corp., 264 F.R.D. 76, 92 (S.D.N.Y. 2010) (Baer, D.J.), quoting In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 33 (2d Cir. 2006). Any doubts concerning the propriety of class certification should be resolved in favor of class certification. Long v. HSBC USA Inc., supra, 2015 WL 5444651 at *6, citing Levitt v. J.P. Morgan Sec., Inc., 710 F.3d 454, 464 (2d Cir. 2013).

1.  Rule 23(a)'s Requirements

a.  Numerosity

Rule 23(a) requires that the members of the proposed class be "so numerous that joinder of all members is impracticable." Here, plaintiffs' counsel represents that it has identified more than 82 members of the putative class (Rumack Decl. ¶ 20). This clearly meets the numerosity requirement. Alcantara v. CNA Mgmt., Inc., 264 F.R.D. 61, 64 (S.D.N.Y. 2009) (Jones, D.J.) ("[N]umerosity is generally presumed when the prospective class consists of 40 members or more."), citing Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 370 (S.D.N.Y. 2007) (McMahon, D.J.); accord Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995); Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 174.

b.  Commonality

Rule 23(a) also requires the existence of questions of law or fact common to the class. The Supreme Court has emphasized that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-50 (2011), quoting General Tel. Co. v. Falcon, 457 U.S. 147, 157 (1982). "[S]ince

11

[a]ny competently crafted class complaint literally raises common questions," I must assess whether the common questions are capable of "generat[ing] common answers apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, supra, 564 U.S. at 349-50 (emphasis and second alteration in original; internal quotation marks omitted); accord Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 175. "[P]laintiffs may meet the commonality requirement where the individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct by a single system.'" Fox v. Cheminova, Inc., 213 F.R.D. 113, 126 (E.D.N.Y. 2003), quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (per curiam). "Even a single common legal or factual question will suffice." Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (Oetken, D.J.) (internal quotation marks omitted).

Plaintiffs claim, and defendants do not dispute, that class members worked as tipped employees for defendants on or after August 19, 2009. Plaintiffs also identify several questions common to the putative class, including whether defendants paid minimum wages and whether defendants misappropriated tips (Pl.'s Mem., at 16). This is sufficient to satisfy the commonality requirement. See, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir. 2011) ("[T]he District

12

Court properly found there to be questions of law or fact common

to the class . . . since the Plaintiffs' NYLL class claims all

derive from the same compensation policies and tipping practices-

. . . ."); Sanchez v. JMP Ventures, L.L.C., 13 Civ. 7264 (GWG),

2015 WL 539506 at *3 (S.D.N.Y. Feb. 10, 2015) (Gorenstein, M.J.);

Flores v. One Hanover, LLC, 13 Civ. 5184 (AJP), 2014 WL 632189 at

*3 (S.D.N.Y. Feb. 18, 2014) (Peck, M.J.) (plaintiffs and class

members "share common issues of fact and law, including whether

Defendants unlawfully took a 'tip credit' and paid less than the

minimum wage . . . [and] misappropriated tips by unlawfully

distributing a portion to non-tip eligible workers"); Lizondro-

Garcia v. Kefi LLC, supra, 300 F.R.D. at 175.

c.  Typicality

Rule 23(a)'s third requirement, typicality, ensures

that "'maintenance of a class action is economical and [that] the

named plaintiff's claim and the class claims are so interrelated

that the interests of the class members will be fairly and

adequately protected in their absence.'" Marisol A. v. Giuliani,

supra, 126 F.3d at 376 (alteration in original), quoting General

Tel. Co. v. Falcon, supra, 457 U.S. at 157 n.13.  "The typicality

requirement is satisfied where 'each class member's claim arises

from the same course of events and each class member makes

13

similar legal arguments to prove the defendant's liability.'"
Long v. HSBC USA Inc., supra, 2015 WL 5444651 at *7, quoting,
inter alia, In re Flag Telecom Holdings, Ltd. Sec. Litig., 574
F.3d 29, 35 (2d Cir. 2009); accord Marisol A. v. Giuliani, supra,
126 F.3d at 376; Manley v. Midan Rest. Inc., supra, 2016 WL
1274577 at *4.

Plaintiffs satisfy the typicality requirement of Rule
23(a) because their claims arise from the same factual and legal
circumstances that form the bases of the putative class members'
claims.  Specifically, plaintiffs and members of the putative
class worked as tipped employees for defendants and claim that
they were subjected to the same minimum wage and tipping prac-
tices (Pl.'s Mem., at 16-17).  This is sufficient to satisfy the
typicality requirement.

d.  Adequacy

To satisfy Rule 23(a)'s adequacy requirement, "the
named plaintiffs must 'possess the same interest[s] and suffer
the same injur[ies] as the class members.'"  In re Literary Works
in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir.
2011) (alterations in original), quoting Amchem Prods., Inc. v.
Windsor, supra, 521 U.S. at 625-26.  "Adequate representation is
a twofold requirement:  class counsel must be qualified and able

14

to conduct the proposed litigation, and the class representatives must not have interests antagonistic to those of the other class members." Fox v. Cheminova, Inc., supra, 213 F.R.D. at 127, citing In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992); accord Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007).

Plaintiffs' counsel has cited five recent multi-plaintiff cases for which he has served as the attorney of record and states that that is a non-exhaustive list (Rumack Decl. ¶ 30). Additionally, there is no evidence that the named plaintiffs have any conflicts with any of the class members. Accordingly, I conclude that plaintiffs satisfy the adequacy requirement of Rule 23(a)(4).

### e.  The Implied Requirement of Ascertainability

Ascertainability is not expressly required under the terms of Rule 23, but is an implied element of class certification. As explained by the late Honorable Harold Baer, United States District Judge, in Fears v. Wilhelmina Model Agency, Inc., 02 Civ. 4911 (HB), 2003 WL 21659373 at *2 (S.D.N.Y. July 15, 2003):

> "[W]hile Rule 23(a) does not expressly require that a
> class be definite in order to be certified, a require-

15

ment that there be an identifiable [aggrieved] class
has been implied by the courts." In re Methyl Tertiary
Butyl Ether ("MTBE") Prods. Liability Litig., 209
F.R.D. 323, 336 (S.D.N.Y. 2002) (internal quotes and
citations omitted); Dunnigan v. Metropolitan Life Ins.
Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003). "An identi-
fiable class exists if its members can be ascertained
by reference to objective criteria." MTBE Prods., 209
F.R.D. at 336.  Membership should not be based on
subjective determinations, such as the subjective state
of mind of a prospective class member, but rather on
objective criteria that are administratively feasible
for the Court to rely on to determine whether a partic-
ular individual is a member of the class. Id.  Fur-
ther, the Court "must be able to make this determina-
tion without having to answer numerous fact-intensive
inquiries." Id. at 336 n.20 (quoting Daniels v. City
of New York, 198 F.R.D. 409, 414 (S.D.N.Y. 2001).

(Alterations in original); accord Brecher v. Republic of Argen-

tina, 806 F.3d 22, 24 (2d Cir. 2015); Flores v. Anjost Corp., 284

F.R.D. 112, 122 (S.D.N.Y. 2012) (McMahon, D.J.); see Manual for

Complex Litigation § 21.222 at 270 (4th ed. 2004) ("Although the

identity of individual class members need not be ascertained

before class certification, the membership of the class must be

ascertainable.").  In this case, plaintiffs' counsel represents,

and defendants do not dispute, that both plaintiffs and defen-

dants produced extensive documentation, including pay stubs and

schedules, from which class members can be identified (Rumack

Decl. ¶¶ 14-16).  Because plaintiffs can identify the class by

reviewing these documents, I conclude that the implied

ascertainability requirement of Rule 23 is met here.

16

2.  Rule 23(b)(3)'s Requirements

As discussed above, Rule 23(b)(3) requires that a plaintiff seeking to represent a class establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

a.  Predominance

The Second Circuit explained the predominance require-ment in Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002):

> "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Prods-., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L.E.2d 689 (1997).  It is a more demanding crite-rion than the commonality inquiry under Rule 23(a). Id. at 623-24, 117 S. Ct. 2231.  Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through gener-alized proof, and if these particular issues are more substantial than the issues subject only to individual-ized proof.  [In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001)].

See Myers v. Hertz Corp., 624 F.3d 537, 549 (2d Cir. 2010) ("[E]conomies of time, effort, and expense in fully resolving

17

each plaintiff's claim will only be served, and the predominance
requirement satisfied, if the plaintiffs can show that
some . . . questions can be answered with respect to the members
of the class as a whole through generalized proof and that those
common issues are more substantial than individual ones." (brack-
ets in original; internal quotation marks and citations omit-
ted)).

Plaintiffs' counsel argues that the predominance
requirement is satisfied because the class is unified by common
factual and legal issues:  "[C]lass members' common factual
allegations and legal theory, i.e. that Defendants implemented
the same employment policies and practices, which violated
federal and state wage and hour laws, predominate over any
variations among class members" (Pl.'s Mem., at 18).  Again,
defendants do not dispute plaintiffs' counsel's contention.

Defendants' alleged failure to pay minimum wages and
misappropriation of plaintiffs' tips are the central issues in
this litigation and relate to the general practices of defendants
with respect to their tipped employees.  Accordingly, the predom-
inance requirement is met.  Lizondro-Garcia v. Kefi LLC, supra,
300 F.R.D. at 177 ("Because defendants' practices applied to
members of the putative NYLL class uniformly, questions regarding
the legality of those policies 'are about the most perfect

18

questions for class treatment.'"), quoting Iglesias-Mendoza v. La Belle Farm, Inc., supra, 239 F.R.D. at 373; accord Shahriar v. Smith & Wollensky Rest. Grp., Inc., supra, 659 F.3d at 253 (predominance requirement satisfied where plaintiffs alleged that servers were required to share tips with a manager).

### b. Superiority

Rule 23(b)(3) also requires plaintiffs to demonstrate that class-wide adjudication is "superior to other available methods for fairly and efficiently adjudicating the controversy." In making this determination, the court must balance "the advantages of a class action against those of alternative available methods of adjudication." Anwar v. Fairfield Greenwich Ltd., 289 F.R.D. 105, 114 (S.D.N.Y. 2013) (Marrero, D.J.), vacated on other grounds sub nom., St. Stephen's Sch. v. PricewaterhouseCoopers Accountants N.V., 570 F. App'x 37 (2d Cir. 2014) (summary order). Rule 23(b)(3) sets forth four non-exhaustive factors relevant to the superiority inquiry:

> (A) the class members' interests in individually con-
> trolling the prosecution or defense of separate ac-
> tions; (B) the extent and nature of any litigation
> concerning the controversy already begun by or against
> class members; (C) the desirability or undesirability
> of concentrating the litigation of the claims in the
> particular forum; and (D) the likely difficulties in
> managing a class action.

19

Although there has been previous litigation against
defendants arising out of similar allegations presented here, see
footnote 3, supra, the rest of these factors weigh in favor of
superiority.  First, litigation by way of a class action is more
economically feasible due to the putative class members' limited
financial resources (Pl.'s Mem., at 19).  Accordingly, "[a] class
action is likely the only means by which all plaintiffs can
practically adjudicate their state law claims."  Long v. HSBC USA
Inc., supra, 2015 WL 5444651 at *9; see Iglesias-Mendoza v. La
Belle Farm, Inc., supra, 239 F.R.D. at 373.  Second, concentrat-
ing this litigation in the Southern District of New York is
appropriate because the allegedly wrongful conduct occurred
within this jurisdiction, and Defendants' business is located in
the jurisdiction (Pl.'s Mem., at 19).  Third, class adjudication,
as opposed to multiple individual actions, will conserve judicial
resources and avoid the waste and delay of repetitive proceedings
on the same issues.

Accordingly, for all the foregoing reasons, I condi-
tionally certify, pursuant to Rule 23(a) and (b)(3), a class
consisting of individuals who worked as servers, runners, bussers
and bartenders and who received tips at Nello from August 19,

2009 through the date of this Order.[4]  See, e.g., Grant v. Warner Music Grp. Corp., 13 Civ. 4449 (PGG), 13 Civ. 5031 (PGG), 2015 WL 10846300 at *1 (S.D.N.Y. Aug. 21, 2015) (Gardephe, D.J.) (conditionally certifying class "consisting of all individuals who were Interns for Defendants in the State of New York from June 17, 2007 through the date of this Preliminary Approval Order"); Davis v. J.P. Morgan Chase & Co., 775 F. Supp. 2d 601, 612 (W.D.N.Y. 2011) (conditionally certifying class "consisting of all individuals who were employed by defendant JPMorgan Chase in the United States in a Covered Position either (1) at any time from September 8, 1999 through the date of this Decision and Order in any state other than New York, or (2) at any time from September 8, 1996 through the date of this Decision and Order in New York State").

B.  Appointment of Class Counsel

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action must . . . appoint class counsel under Rule 23(g)."  Darren P.B. Rumack, Esq., lead counsel for plaintiffs,

---

[4]Individuals who meet this definition, but who have released all claims against defendants as a result of settlements in cases bearing docket numbers 09 Civ. 9940 (PAC) (S.D.N.Y.) and 12 Civ. 3060 (JPO) (S.D.N.Y.), are excluded from the class.

21

requests that I designate his firm, the Klein Law Group, P.C., as counsel for the NYLL class.

Rule 23(g)(1)(A) sets forth four factors that must be considered in appointing class counsel:

> (i) the work counsel has done in identifying or inves-tigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

A court may also consider "any other matter pertinent to coun-sel's ability to fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(B).

As discussed in Section III(A)(1)(d), _supra_, plain-tiffs' counsel has experience litigating wage-and-hour cases, including multi-plaintiff cases, and is knowledgeable concerning the applicable law (Rumack Decl. ¶¶ 29, 30-31, 33). Moreover, the Klein Law Group, P.C. has done substantial work in investi-gating, prosecuting and settling the action (Rumack Decl. ¶¶ 11-19). Although the Klein Law Group, P.C. did not represent plaintiffs from the lawsuit's inception, counsel met with several of the named plaintiffs, reviewed documents and corresponded with defendants regarding pending discovery matters before their substitution as counsel (Rumack Decl. ¶ 12). When substituted as counsel, counsel prosecuted the action and participated in an

22

hours-long mediation to resolve the dispute (Rumack Decl. ¶¶ 15-19).  Accordingly, the Klein Law Group, P.C. is appointed counsel for the class.

> C.  Preliminary Approval
>     of the Settlement Agreement

Plaintiffs also seek preliminary approval of the Settlement Agreement, which would resolve the claims brought on behalf of the FLSA collective and the NYLL class.

Pursuant to Rule 23(e), the settlement of a class action is not effective until judicially approved.  Although there is a general policy favoring settlements, the court may approve a class action settlement only if it is "fair, adequate, and reasonable, and not a product of collusion."  Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000).  "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005), citing D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).

In assessing procedural fairness, there is a "presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length

23

negotiations between experienced, capable counsel after meaning-ful discovery.'" McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009) (alteration in original), quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., supra, 396 F.3d at 116.

In assessing whether a settlement is substantively fair, reasonable and adequate, courts in this Circuit use the nine-factor test set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000). McReynolds v. Richards-Cantave, supra, 588 F.3d at 804; accord Charron v. Wiener, 731 F.3d 241, 247 (2d Cir. 2013); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 619 (S.D.N.Y. 2012) (A. Carter, D.J.).  Those factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the set-tlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of estab-lishing liability; (5) the risks of establishing dam-ages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reason-ableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

McReynolds v. Richards-Cantave, supra, 588 F.3d at 804, quoting City of Detroit v. Grinnell Corp., supra, 495 F.2d at 463.

24

Preliminary approval is the first step in the settle-
ment of a class action whereby the court "must preliminarily
determine whether notice of the proposed settlement . . . should
be given to class members in such a manner as the court directs,
and an evidentiary hearing scheduled to determine the fairness
and adequacy of settlement." Manley v. Midan Rest. Inc., supra,
2016 WL 1274577 at *8 (alteration in original; internal quotation
marks omitted); accord Lizondro-Garcia v. Kefi LLC, supra, 300
F.R.D. at 179; Davis v. J.P. Morgan Chase & Co., supra, 775 F.
Supp. 2d at 607.

> Preliminary approval of a settlement agreement
> requires only an "initial evaluation" of the fairness
> of the proposed settlement on the basis of written
> submissions and an informal presentation by the set-
> tling parties. Clark v. Ecolab, Inc., Nos. 07 Civ.
> 8623 (PAC) et al., 2009 WL 6615729, at *3 (S.D.N.Y.
> Nov. 27, 2009) (citing Herbert B. Newberg & Alba Conte,
> Newberg on Class Actions ("Newberg") § 11.25 (4th ed.
> 2002)). Nevertheless, courts often grant preliminary
> settlement approval without requiring a hearing or a
> court appearance. See Hernandez v. Merrill Lynch &
> Co., Inc., No. 11 Civ. 8472 (KBF)(DCF), 2012 WL 586274-
> 9, at *1 (S.D.N.Y. Nov. 15, 2012) (granting preliminary
> approval based on plaintiffs' memorandum of law, attor-
> ney declaration, and exhibits). To grant preliminary
> approval, the court need only find that there is
> "'probable cause' to submit the [settlement] to class
> members and hold a full-scale hearing as to its fair-
> ness." In re Traffic Exec. Ass'n, 627 F.2d 631, 634
> (2d Cir. 1980); see Newberg § 11.25 ("If the prelimi-
> nary evaluation of the proposed settlement does not
> disclose grounds to doubt its fairness . . . and ap-
> pears to fall within the range of possible approval,"
> the court should permit notice of the settlement to be
> sent to class members); see also Girault v. Supersol

25

    661 Amsterdam, LLC, No. 11 Civ. 6835 (PAE), 2012 WL
2458172, at *1 (S.D.N.Y. June 28, 2012) (granting
preliminary approval where the "proposed Settlement
Agreement [was] within the range of possible settlement
approval, such that notice to the Class [was] appropri-
ate"); Danieli v. IBM, No. 08 Civ. 3688, 2009 WL
6583144, at *4-5 (S.D.N.Y. Nov. 16, 2009) (granting
preliminary approval where settlement "has no obvious
defects" and proposed allocation plan is "rationally
related to the relative strengths and weaknesses of the
respective claims asserted").  "If the proposed settle-
ment appears to fall within the range of possible
approval, the court should order that the class members
receive notice of the settlement." Yuzary, 2013 WL
1832181, at *1 (internal quotation marks and citation
omitted).

Tiro v. Public House Invs., LLC, 11 Civ. 7679 (CM), 11 Civ. 8249
(CM), 2013 WL 2254551 at *1 (S.D.N.Y. May 22, 2013) (McMahon,
D.J.) (alterations in original).

    I previously refused to preliminarily approve the
Settlement Agreement on several grounds (Order, dated May 23,
2017 (D.I. 61)).  First, it was impossible to evaluate the
reasonableness of the settlement fund because counsel did not
provide an estimate of the putative class's damages.  Second, the
Settlement Agreement contained a general release for the named
plaintiffs that ran only in favor of defendants.  Third, the
Settlement Agreement contained a clause in Section 4.2(C) prohib-
iting plaintiffs from publicizing the terms of the agreement.  I
ordered the parties to either (1) (a) provide an estimate of the
putative class's damages; (b) narrow the named plaintiffs'

release to the conduct set forth in the lawsuit and (c) delete
the confidentiality clause identified above or (2) file a letter
indicating their intention to abandon the settlement and proceed
with litigation.

The parties have submitted a revised Settlement Agree-
ment that addresses the foregoing issues.  In accordance with my
previous Order, counsel has provided an estimate of the putative
class's damages.  Counsel has also deleted the general release
from the Settlement Agreement; instead, the named plaintiffs
agreed to a general release by a separate agreement.[5]  Finally,
the parties deleted the confidentiality clause that previously
appeared in Section 4.2(C) of the Settlement Agreement.

Applying the foregoing principles, including the
Grinnell factors "to the extent they are relevant at the prelimi-
nary stage," Long v. HSBC USA Inc., supra, 2015 WL 5444651 at *3,
I conclude, based on plaintiffs' memorandum of law, the declara-
tion of Darren P.B. Rumack, Esq., and my own review of the
Settlement Agreement, that there is probable cause to believe
that the Settlement Agreement is fair, reasonable and adequate.

---

[5]Such a bifurcated settlement agreement is permissible.
Ortiz v. Breadroll, LLC, 16 Civ. 7998 (JLC), 2017 WL 2079787 at
*2 (S.D.N.Y. May 15, 2017) (Cott, M.J.); Yunda v. SAFI-G, Inc.,
15 Civ. 8861 (HBP), 2017 WL 1608898 at *2 (S.D.N.Y. Apr. 28,
2017) (Pitman, M.J.); Abrar v. 7-Eleven, Inc., No. 14-cv-6315
(ADS)(AKT), 2016 WL 1465360 at *1 (E.D.N.Y. Apr. 14, 2016).

First, litigation of this matter, which includes more than 82 class members and both federal and state claims, through trial would be complex, costly and long.  Henry v. Little Mint, Inc., 12 Civ. 3996 (CM), 2014 WL 2199427 at *7 (S.D.N.Y. May 23, 2014) (McMahon, D.J.) ("'Most class actions are inherently complex and settlement avoids the costs, delays and [the] multitude of other problems associated with them.'"), quoting In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (Kram, D.J.), aff'd sub nom., D'Amato v. Deutsche Bank, supra, 236 F.3d 78.  Additional discovery, including depositions of all parties, would be required (Pl.'s Mem., at 9). "Preparation for trial would . . . seriously prolong the outcome of this suit in addition to consuming tremendous amounts of time, expenses and judicial resources."  Sewell v. Bovis Lend Lease, Inc., 09 Civ. 6548 (RLE), 2012 WL 1320124 at *7 (S.D.N.Y. Apr. 16, 2012) (Ellis, M.J.).  Moreover, "[l]itigating the claims of [more than 80] putative class members would undoubtedly yield expensive litigation costs that can be curbed by settling the action."  Sewell v. Bovis Lend Lease, Inc., supra, 2012 WL 1320124 at *7.

Second, discovery has advanced sufficiently to allow the parties to resolve the case responsibly.  The parties have exchanged thousands of pages of documents, including tip sheets,

pay stubs, schedules, personnel files, employee handbooks and tax
forms (Rumack Decl. ¶¶ 15-16).  Additionally, the parties engaged
in an hours-long mediation with an experienced, neutral, third-
party mediator before reaching their settlement (Rumack Decl. ¶¶
17-19).  This factor further weighs in favor of preliminarily
finding the settlement fair, adequate and reasonable.  Silverste-
in v. AllianceBernstein, L.P., 09 Civ. 5904 (JPO), 2013 WL
4713553 at *2 (S.D.N.Y. Aug. 27, 2013) (Oetken, D.J.); Palacio v.
E*TRADE Fin. Corp., 10 Civ. 4030 (RJH)(DCF), 2012 WL 1058409 at
*1 (S.D.N.Y. Mar. 12, 2012) (Freeman, M.J.).

Third, plaintiffs would face real risks with respect to
establishing liability and damages, as well as maintaining the
class action, if the case proceeded to trial.  Defendants have
potentially strong defenses to plaintiffs' allegation that
defendants misappropriated plaintiffs' tips.  Specifically, while
plaintiffs alleged that five individuals were not entitled to
participate in the tip pool, defendants have provided information
indicating that four of these individuals could legally partici-
pate in the tip pool (Pl.'s Mem., at 13).  Additionally, defen-
dants contend that their actions were not willful (Pl.'s Mem., at
11).  Further, if this case were to continue to trial, defendants
would likely contend that class certification would be inappro-
priate because determining liability and damages would require

individual determinations for each putative class member (Pl.'s
Mem., at 11-12).

Fourth, defendants' ability to satisfy a greater
judgment is unclear.  "Even if [defendants] could have withstood
a greater judgment, a 'defendant's ability to withstand a greater
judgment, standing alone, does not suggest that the settlement is
unfair.'"  Beckman v. KeyBank, N.A., 293 F.R.D. 467, 476 (S.D.N.-
Y. 2013) (Ellis, M.J.), quoting Frank v. Eastman Kodak Co., 228
F.R.D. 174, 186 (W.D.N.Y. 2005).

Fifth, the settlement fund represents a substantial
percentage of plaintiffs' best possible recovery; given the risks
of litigation, the amount of the settlement weighs in favor of
approving the settlement.  Plaintiffs' counsel has calculated
that the putative class is owed at least $375,000.00 in misappro-
priated tips (Rumack Decl. ¶ 22), and the total settlement amount
is $342,500.00.  After deducting the service awards and attor-
neys' fees and costs, class members will receive approximately
50% of their claimed misappropriated tips.  In light of the risks
of litigation, this recovery weighs in favor of approving the
settlement. Bodon v. Domino's Pizza, LLC, No. 09-CV-2941 (SLT),
2015 WL 588656 at *6 (E.D.N.Y. Jan. 16, 2015) (Report & Recommen-
dation) ("[T]he question [in assessing the fairness of a class
action settlement] is not whether the settlement represents the

30

highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces . . . ." (internal quotation marks omitted)), adopted sub nom. by, Bodon v. Domino's Pizza, Inc., 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015); Massiah v. MetroPlus Health Plan, Inc., No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012) ("[W]hen a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing specula-tive payment of a hypothetically larger amount years down the road, settlement is reasonable . . . ." (internal quotation marks omitted; assessing fairness of class action settlement)).

Finally, the Settlement Agreement was reached after arm's-length negotiations between counsel, which included an hours-long mediation before a neutral, third-party mediator (Rumack Decl. ¶¶ 17-19). In light of counsels' experience and conduct in this action, I have no reason to doubt that the terms of the Settlement Agreement are fair, reasonable and adequate.[6]

---

[6]Although plaintiffs do not apply at this time for attor-neys' fees and costs, the claims administrator's costs or the service awards to the named plaintiffs, such items are routinely approved in this Circuit. Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 180; see Chavarria v. New York Airport Serv., LLC, 875 F. Supp. 2d 164, 177-79 (E.D.N.Y. 2012); Morris v. Affinity Health Plan, Inc., supra, 859 F. Supp. 2d at 622-24.

31

Accordingly, plaintiffs' motion for preliminary ap-
proval of the Settlement Agreement is granted.

D.  Plaintiffs' Proposed Notice

Plaintiffs also seek approval of the revised Proposed
Notice accompanying their motion (Rumack Letter, Ex. B).[7]  Pursu-
ant to the Settlement Agreement, the settlement claims adminis-
trator will mail the Proposed Notice to each class member's last
known address by first-class mail (Rumack Letter, Ex. A §§ 1.9,
2.4(B)).  Additionally, if notices to any class members are
returned as undeliverable, the claims administrator "shall take
reasonable steps to obtain the correct address of such Class
Member, including one skip trace, and shall attempt a re-mailing
provided it obtains a more recent address" (Rumack Letter, Ex. A
§ 2.4(C)).

"Where, as here, the parties seek simultaneously to
certify a settlement class and to settle a class action, the
elements of Rule 23(c) notice (for class certification) are
combined with the elements of Rule 23(e) notice (for settlement
or dismissal)."  In re Global Crossing Sec. & ERISA Litig., 225
F.R.D. 436, 448 (S.D.N.Y. 2004) (Lynch, then D.J., now Cir. J.);

---

[7]Counsel revised the Proposed Notice after I had a confer-
ence call with all counsel on August 15, 2017.

accord Gatto v. Sentry Servs., Inc., 13 Civ. 5721 (RMB)(GWG),

2014 WL 7338721 at *3 (S.D.N.Y. Dec. 19, 2014) (Berman, D.J.);

Shapiro v. JPMorgan Chase & Co., 11 Civ. 8331 (CM)(MHD), 11 Civ.

7961 (CM), 2014 WL 1224666 at *17 (S.D.N.Y. Mar. 24, 2014)

(McMahon, D.J.); In re Citigroup Inc. Sec. Litig., 965 F. Supp.

2d 369, 379-80 (S.D.N.Y. 2013) (Stein, D.J.).

        Pursuant to Rule 23(c)(2)(B), "the court must direct

[that] class members [be provided with] the best notice that is

practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort."

See Fed.R.Civ.P. 23(e)(1) ("The court must direct notice in a

reasonable manner to all class members who would be bound by the

proposal.").  The notice must describe:

> (i) the nature of the action; (ii) the definition of
> the class certified; (iii) the class claims, issues, or
> defenses; (iv) that a class member may enter an appear-
> ance through an attorney if the member so desires; (v)
> that the court will exclude from the class any member
> who requests exclusion; (vi) the time and manner for
> requesting exclusion; and (vii) the binding effect of a
> class judgment on members under Rule 23(c)(3).

Fed.R.Civ.P. 23(c)(2)(B).

        I conclude that the process described by counsel for

providing notice to the class comports with Rule 23(c)(2)(B).

        As to the form and content of the Proposed Notice, I

find that a majority of the Rule 23(c)(2)(B) requirements are

33

satisfied.  However, plaintiffs are directed to make the follow-
ing additional modifications to the Proposed Notice.

First, a bullet point should be added under the section
entitled "IMPORTANT DEADLINES" setting out the last date on which
a claim can be filed.

Second, the section entitled "DISMISSAL OF THE CASE AND
RELEASE OF CLAIMS" must be revised.  Section 4.1(A) of the
Settlement Agreement provides that "each individual Class Member,
who does not timely opt-out pursuant to this Agreement," will
release defendants and the other releasees "from all wage and
hour claims asserted, or wage and hour claims that could have
been asserted, under federal or state laws" (Rumack Letter, Ex. A
§ 4.1(A) (emphasis added)).[8]  However, the Proposed Notice cur-
rently states that only those class members who submit a claim
form and cash their checks will release their FLSA claims.  The
Proposed Notice is ambiguous on the claims class members who do
not submit a claim form would release; while the first paragraph
states that "all Class Members will fully release and discharge
Defendants from any wage or hour claims and/or state or local

---

[8]While the second paragraph of the release specifically
provides that those class members who submit a claim form will
release their FLSA claims (Rumack Letter, Ex. A § 4.1(A)), the
language of the first paragraph, quoted above, is broad enough to
cover those class members who do not submit a claim form (Rumack
Letter, Ex. A § 1.7 (defining "Class Members")).

34

wage and hour laws," the second paragraph states that "Class Members that do not submit a claim form will still release their NYLL claims against Defendants." The Proposed Notice must be revised to match the Settlement Agreement and consistently provide that all class members who do not opt out, even those who do not submit a claim form, will release claims under both the FLSA and NYLL.

Third, I direct that the first bullet point under the second paragraph of the section entitled "HOW WILL MY SHARE BE CALCULATED IF I PARTICIPATE?" be revised to correctly state -- per Section 3.5(A) of the Settlement Agreement -- that "[e]ach Class Member will be assigned one point for each week worked at Nello from August 19, 2009 through July 28, 2017, the date the settlement agreement was signed." This section should also explain that no class member who timely and validly submits a claim form will receive less than $100.00.

Fourth, I direct that the second paragraph of the section entitled "UNCASHED CHECKS" be revised to correctly state -- per Section 4.1(A) of the Settlement Agreement -- that an Authorized Claimant's "release of all FLSA and NYLL claims will still be effective" if the Authorized Claimant does not cash his or her settlement check.

35

IV.  Conclusion

Accordingly, for all the foregoing reasons, plaintiffs' motion is granted.  It is hereby ORDERED that:

    1.  The proposed class is conditionally certified pursuant to Rule 23(a) and (b)(3).  Alexandru Surdu, Dino Tito, Anastasia Mayfat, Ciprian Grosu and Luis Lopez are appointed class representatives and the Klein Law Group, P.C. is appointed class counsel.

    2.  The Settlement Agreement is approved preliminarily.

    3.  Counsel shall submit a proposed revised notice to class members to my chambers no later than September 22, 2017.

    4.  Within 15 days of the date of this Order, defendants will provide the settlement claims administrator and plaintiffs' counsel with a list, in electronic form, of the (1) names, (2) last known addresses, (3) dates of employment and (4) social security numbers of each class member.

    5.  Within 40 days of the final approval of the notice to class members, the settlement claims administrator shall mail, via first class mail, the revised

notice to the members of the class using each individual's last known address.

6.   Class members will have 45 days from the date the revised notice is mailed to file a claim form, opt out of the settlement or file written objections.

7.   The Court shall hold a fairness hearing on January 19, 2018 at 10:00 a.m. at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 18-A, New York, New York 10007.

8.   No later than January 3, 2018, counsel for plaintiffs shall move and file a memorandum of law in support of final approval of the Settlement Agreement, an award of attorneys' fees and costs and service awards.

9.   The Clerk of the Court is respectfully requested to close Docket Items 58 and 66.

Dated:   New York, New York
         September 1, 2017

SO ORDERED

_____

HENRY PITMAN
United States Magistrate Judge

37

Copies transmitted to:

All Counsel of Record